SHOWALTER v. UNITED STATES et al.

(Circuit Court of Appeals, Fourth Circuit. October 1, 1918. On Rehearing, April 28, 1919.)

No. 1608.

1. CRIMINAL LAW ☞619—CONSOLIDATION OF INDICTMENTS—VALIDITY.
   The Consolidation Statute is not invalid upon ground that federal Constitution requires each indictment to be passed upon by a separate jury.

2. CRIMINAL LAW ☞720(7)—ARGUMENT TO JURY—CONCLUSION FROM EVIDENCE.
   A conviction for misapplying national bank funds will not be reversed because the district attorney argued to the jury that defendant had caused the bank to lose money.

3. CRIMINAL LAW ☞829(1)—INSTRUCTIONS.
   A conviction will not be set aside for failure to give requested instructions where the charge actually given fully stated the law.

4. CRIMINAL LAW ☞815(1)—REQUESTED INSTRUCTIONS—MISLEADING CHARACTER.
   In a prosecution for misapplying national bank funds, a requested instruction which was calculated to mislead the jury by reciting only a part of the relevant testimony *held* properly refused.

5. BANKS AND BANKING ☞257(4)—MISAPPLYING NATIONAL BANK FUNDS—INSTRUCTION.
   In a prosecution for misapplying national bank funds, a portion of the charge illustrating the difference between a misapplication and an embezzlement, *held* not open to the objection that it authorized a conviction without proof of intent to injure and defraud the bank.

6. BANKS AND BANKING ☞257(3)—MISAPPLYING BANK FUNDS—SUFFICIENCY OF EVIDENCE.
   Evidence that defendant bank official, being unable to pay his own note, paid it from the bank's funds, and substituted the note for the cash, etc., *held* to sustain a conviction for misapplying national bank funds.

   Pritchard, Circuit Judge, dissenting on rehearing.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Northern District of West Virginia, at Martinsburg; Charles A. Woods, Judge.

Howard W. Showalter was convicted of misapplying bank funds, and brings error. Affirmed.

Certiorari denied 250 U. S. 672, 40 Sup. Ct. 14, 64 L. Ed. ——.

John A. Howard, of Wheeling, W. Va. (J. M. Ritz, of Wheeling, W. Va., on the brief), for plaintiff in error.

Harry H. Byrer, Asst. U. S. Atty., of Philippi, W. Va. (Stuart W. Walker, U. S. Atty., of Martinsburg, W. Va., on the brief), for defendants in error.

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The plaintiff in error will be called the defendant, the position he had below. For a number of years prior to August, 1915, he had been vice president of the First National Bank of Fairmont, W. Va., and one of its directors and large stockholders. He was its ranking officer, in regular daily attendance. The jury might well have found that its affairs had long been very largely under his control. It once had had, and still publicly claimed, a capital of $200,000, and a surplus of $100,000. The comptroller of the currency had made up his mind that the surplus, and much, if not, all the capital, had been lost. He was unwilling it should continue its business. In order to prevent serious damage to the interests of the community, its assets were taken over by another of the national banks of Fairmont. The latter undertook to pay its debts, in so doing being partly protected by an agreement with the other banking institutions of the place, by the terms of which any loss incurred should be apportioned among them and it. The amount to be apportioned will not fall short of a quarter of a million dollars, and may considerably exceed that sum. An official investigation naturally followed, and as the result two indictments, one of 39 and the other of 6 counts, were returned against the defendant. By these he was charged with various false entries, misapplications, and embezzlement. By order of the court, and against his protest, these indictments were consolidated. He was found guilty as to the fifth count of the second indictment, which charged the willful misapplication of $2,066.46 of the bank's money with intent to injure and defraud it. He was acquitted on all the other counts. He originally assigned 11 errors. Abandoning the fifth of the series, he relies on the remaining 10. Little need be said as to most of them.

[1] He asserts by the first that the Constitution of the United States, properly construed, requires that each indictment shall be passed on by a separate jury, and that therefore the Consolidation Statute is itself invalid. If a statement of the contention is not its own sufficient answer, it would still be true that there must come a time when a question must be treated as finally settled. In view of the hundreds of cases in which like consolidations have been made and sustained by all courts, including the highest, it came many years ago.

There is nothing to show that in making the order in this case the court below abused its discretion.

[2] The second assignment of error complains that the district attorney argued to the jury that the defendant had caused the bank to lose money. The defendant says the evidence shows he did not. It is only under exceptional circumstances not here presented that an appellate court will set aside a judgment because counsel, in arguing to the jury, attempted to draw an extreme or unjustified conclusion from the evidence. In so saying, we must not be understood as intimating that in our opinion counsel for the government did so.

[3] The fourth, sixth, seventh, and eighth assignments are directed to the court's refusal of various requests for instructions as to the burden of proof, the presumption of innocence, and benefit of reasonable doubt. The court in the charge actually given, fully and accurately stated the law applicable to all these questions.

[4] The ninth assignment is based upon the denial of an asked-for instruction, which by segregating and reciting some but far from all of the testimony relevant to the count in question, was well calculated to mislead the jury.

[5] The tenth assignment asserts that the court used language which might have led the jury to believe that they could properly convict under the count upon which the conviction was obtained, although they did not find the defendant had made the misapplication charged with intent to injure and defraud the bank. The court had at length, and in careful and appropriate language, charged the jury. In the course of so doing the learned judge had repeatedly, clearly, and emphatically warned the jury that they could not convict unless they found such intent. When the charge was completed some discussion followed with counsel, and then it occurred to him that perhaps he had not stated the distinction between misapplication and embezzlement with sufficient clearness. He set about repairing this omission, and for the purpose of showing the difference between a misapplication and an embezzlement said:

"If a man takes funds of the bank from the bank's cash account, for example, and puts them to his own or some one else's use, that is misapplication of the funds at the bank, although he may not intend to embezzle, if he does it with intent. Abstraction implies not only a willful misapplication, but the actual taking of the funds from the bank, and the conversion of them to his own use and benefit, or to the benefit of another, with intent to defraud the bank. Now I think you will see, if you will just bear in mind the words misapplication and abstraction, abstraction means taking out; misapplication, while it stays inside the bank."

It is apparent to every one that the word "intent" as here used meant intent to injure or defraud. It is equally certain that every one present at the time so understood it. Immediately after he had used the language in question, he asked counsel whether they had any exceptions. If there had been any doubt in anybody's mind as to the meaning of what he then said, his attention would have been at once called to the point now made.

[6] There remains for consideration the third and eleventh assignments, which raise the question of whether there was sufficient evi-

dence to sustain the verdict of guilty. The misapplication in question took place on the 10th of July, 1915. There was evidence which would have justified the jury in finding that for months before that date the bank had been in desperate straits. In the preceding February, at the demand of the comptroller of the currency, the directors, including the defendant, unanimously voted "that no officer or official of this bank shall pay or charge to the account of any depositor any check of such depositor when there are not sufficient funds on deposit to the credit of the drawer of the check to meet the same." On the 21st of June the bank examiner requested the members of the board personally to purchase certain questionable assets of the bank. The board declined, and requested an interview with the comptroller. The board, through the committee of which the defendant was a member, had such interview on the 24th and 25th of June. As the result, a written agreement was entered into, and signed by the defendant, among others. By its terms $160,000 of paper was to be taken out of the bank. That sum exceeded by nearly $55,000 the total undivided profits and surplus of the bank. From this agreement it appears that $72,000 of this $160,000 was paper upon which the defendant was either principal or indorser. It was stipulated that, to avoid an assessment on the stockholders, the defendant would give his note for this $72,000, secured by the indorsement of some one satisfactory to the comptroller of the currency, and within 30 days he was to apply not less than $25,000 cash to this note. The agreement further provided that if the whole $160,000 was not provided for in 30 days it would be charged off, and the comptroller would send out formal notices of impairment of capital stock. The defendant expressly agreed that if he could not carry out his arrangements within 30 days he would sell out the bank or put it in liquidation.

On the 10th of July, two weeks and one day after making this agreement, a note for $2,066.46, which was in fact, although not in form, his own, was presented to him for payment. The holders of said note were insistent on immediate satisfaction. He had no funds, or practically none, to his credit at the bank, and yet he paid the note out of the bank's money. He left the note as cash with the bank. It was secured by a vendor's lien on some real estate. Less than a month later, the terms of the agreement of June 25th not having been complied with, the bank was, at the demand of the comptroller of the currency, taken over as already stated. In the course of liquidation of its assets, legal proceedings were taken to foreclose the vendor's lien above referred to. As the result the property was sold, and nearly two years after the money was taken out of the bank it was in that way recovered.

There was no question that the defendant had misapplied the funds in question. He knew the bank was in desperate straits for money, and he had been instructed not to permit overdrafts. If Bacon v. U. S., 97 Fed. 35, 38 C. C. A. 37, is sound law, this transaction was an overdraft; but if it was a loan, the conclusion would be the same. It is not claimed that defendant had any authority to make loans. He himself was in financial difficulties, and, being unable out of his own funds

to meet the note, he took the bank's ready money, and substituted for it an obligation not easily collectable, and of which the then holder was anxious to be rid. In the then condition of the bank, it was injured by withdrawing cash from it and substituting such a security in its place. The jury were entitled to find that the defendant had intended the obvious consequence of what he did. As was well said by the Circuit Court of Appeals for the Seventh Circuit in Walsh v. U. S., 174 Fed. at page 618, 98 C. C. A. at page 464:

"For a promotor of various enterprises to obtain the funds of a bank on the security of unmarketable bonds of his own enterprises at the risk of the interests of the bank is not proper and legitimate banking, and the entries on the books of the bank as loans and investments do not conceal the fraud thus perpetrated upon the bank."

And the Circuit Court of Appeals for the Third Circuit, in Lear v. U. S., 147 Fed. 359, 77 C. C. A. 537, has said:

"A reckless act, moreover, is always regarded, as the equivalent of a willful one, and that at least was here. The possibility of injury was apparent on the face of the transaction, notwithstanding which the interests of the institution of which he was the trusted head were put aside, and his own made paramount, in utter disregard of the outcome."

Affirmed.

### On Rehearing.

Careful consideration has been given to all that at the rehearing was urged upon behalf of the defendant, but the majority of the court adhere to the opinion handed down October 1, 1918, and to the conclusion therein reached.

Affirmed.

PRITCHARD, Circuit Judge (dissenting). When this case was here in the first instance on appeal I concurred in the opinion of the court at that time. However, a further consideration of the questions involved impels me to the conclusion that the judgment of the court below should be reversed. The reasons upon which I base my conclusion may be briefly stated as follows:

(a) I am of the opinion that the court below erred in granting the motion of the government to consolidate the indictments.

(b) That the court erred in permitting the district attorney to argue to the jury that the bank had lost money on account of the conduct of the defendant, whereas it does not appear that the bank lost any money on account of the transaction for which defendant was indicted.

(c) As I have stated, the record shows that the bank did not lose a single dollar on account of any of the transactions of the defendant.

Therefore I am of the opinion that the court erred in refusing to grant the instruction referred to in the ninth bill of exception. The defendant was entitled to have this instruction submitted to the jury. It clearly raises the question as to whether it was shown by the evidence that the defendant committed the acts with which he is charged with intent "to injure or defraud the bank."