## FRIEDEN et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 14, 1925.)

### No. 2317.

**1. Criminal law ☞619—Indictments for conspiracy to conceal assets and for concealment of same assets held properly consolidated for trial.**

Two indictments, one charging conspiracy to conceal the assets of a bankrupt, and the other charging concealment of the same assets, *held* properly consolidated for trial.

**2. Conspiracy ☞47—Bankruptcy ☞495—Evidence held to sustain conviction of bankrupts for conspiracy to conceal and for concealment of assets.**

Evidence *held* to sustain conviction of the members of a bankrupt partnership and employees of conspiracy to conceal its assets and concealment of assets.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Criminal prosecution by the United States against Harry Frieden and others. Judgment of conviction of certain defendants, and they bring error. Affirmed.

Tazewell Taylor, of Norfolk, Va., Robert H. Talley, of Richmond, Va., and S. M. Brandt, of Norfolk, Va. (Ernest S. Merrill and H. A. Sacks, both of Norfolk, Va., on the brief), for plaintiffs in error.

L. S. Parsons, Asst. U. S. Atty., of Norfolk, Va. (Paul W. Kear, U. S. Atty., and Alvah H. Martin, Asst. U. S. Atty., both of Norfolk, Va., on the brief), for the United States.

Before WOODS and WADDILL, Circuit Judges, and McDOWELL, District Judge.

WOODS, Circuit Judge. The defendants, Harry Frieden, Samuel Frieden, Louis Frieden, Ellis Frieden, and Charles Scher, were convicted on all of the counts of two indictments which were consolidated on trial. Hyman Frieden, indicted with them, was acquitted. One indictment charged the partners Harry Frieden, Samuel Frieden, and Louis Frieden with conspiracy to conceal the assets of a partnership known as the Frieden Company, adjudicated bankrupt on December 17, 1923. Ellis Frieden and Charles Scher, two employees of the copartnership, were charged with aiding and abetting the conspiracy. The first count set out a conspiracy in anticipation of bankruptcy; the second count laid the charge after bankruptcy.

Both counts of the other indictment charged the members of the partnership with concealment of assets after bankruptcy, and the other defendants with aiding and abetting the crime.

[1] There was no error in consolidating the indictments: They related to the same transactions; the evidence was practically the same; and separate trials would have been a waste of time. Showalter v. United States, 260 F. 719, 171 C. C. A. 457.

[2] The motion to direct a verdict of acquittal for lack of evidence was without foundation. The evidence of guilt of all the convicted defendants was strong.

On or about April 1, 1923, Harry Frieden, Samuel Frieden, and Louis Frieden, three brothers, formed a copartnership under the name of the Frieden Company. Harry and Samuel Frieden had been associated for some years before that date as partners in the manufacturing business in Waynesboro, Pa., under the firm name of "Cumberland Valley Shirt Manufacturing Company." The ostensible plan of the new partnership was to continue the manufacturing business in Waynesboro and to operate a system of chain stores handling men's furnishing goods in the cities of Norfolk, Richmond, and Roanoke, Va. Ellis Frieden, a son of Louis Frieden, was employed in the firm's Roanoke store, and Charles Scher was manager of one of the Richmond stores. The net worth of the new firm at the commencement of business, according to its statement to a commercial credit agency, was $174,185.52. At first all obligations were paid promptly by the Frieden Company, and thus high credit rating was established. Later, long terms of credit were secured on large orders of goods, and after a while creditors were unable to obtain payment for large bills overdue. In this situation the copartnership and the individuals composing it were thrown into bankruptcy. When a receiver was appointed, he had difficulty in getting the books and records of the bankrupts, and finally was furnished with an incomplete set.

The trustee, Alfred Anderson, testified that after making every fair allowance, which he fully explained to the jury, in favor of the defendants and crediting them with goods on hand at cost prices, the assets appearing from the books and vouchers unaccounted for amounted to $242,660.61. There was no evidence of extraordinary disaster attending the business; none of the defendants charged the others with conversion or breach of trust against the copartnership; nor was there any evidence that any of them made a complaint to the others that the business was going wrong. The inference might well have been drawn by the jury that the partners had failed to show where this very large deficiency of assets had gone, that $242,000 had not been lost in the business, which lasted only 8½ months, that its disappearance was not satisfactorily explained, and that the defendants had by agreement concealed it for their own benefit. This would have been sufficient basis for the conviction of all the copartners without other testimony. But there was much more.

Louis Frieden and Ellis Frieden, his son, were in charge of the Roanoke store. Sallis, an employee of the Roanoke store, testified that large quantities of goods were shipped from that store under fictitious names, and to fictitious consignees, and that the bills of lading were in the handwriting of Ellis Frieden. B. Miller testified that goods were shipped to him in a fictitious name contrary to his request that his own name be used; that cash was required of him; and that he several times paid in thousand-dollar bills. Express agents testified that Ellis Frieden paid for C. O. D. shipments on three occasions with thousand-dollar bills. There was evidence that Ellis Frieden kept his bank account in his wife's name and deposited funds of the partnership in that account; that he opened a bank account in Scher's name, and after the adjudication deposited in it a thousand-dollar bill, and drew checks

in Scher's name, receiving by his request bills of the same denomination. A letter from Harry Frieden to Ellis Frieden indicated that he was receiving goods from Ellis. In the letter he said that he was obliged to sell clothing at 55 per cent. of cost; that "things would be cleaned up pretty good"; that "I don't think we ought to keep balances in banks." Samuel Frieden, in charge of the Waynesboro business, received there large quantities of goods in packages which he immediately unpacked, and repacked in different cases and sent to the Roanoke and Richmond stores. Tending to show his purpose to make large purchases in anticipation of bankruptcy, was the evidence that Samuel Frieden made rapid increases in purchases and decreases in payments as bankruptcy approached. In May, 1923, purchases were nothing and payments $1,563.59; June, purchases $2,859.73, payments $2,696.-42; July, purchases $4,409.52, payments $4,-342.42; August, purchases $3,254.28, payments $50.00; September, purchases $10,-818.05, payments $3,245.17; October, purchases $31,813.25, payments $2,100.79; November, purchases $20,093.96, payments $1,-944.11. Corresponding increases in purchases and decreases in payments appeared at the other places of business. The purchases in October, November, and December, on the eve of bankruptcy, were over $200,000.

Large quantities of goods were shipped from the Richmond store by Scher under assumed names to fictitious persons. After bankruptcy, Scher bought in his own name the goods in the Richmond and Roanoke stores for $10,000, paid in thousand-dollar bills. There was evidence from A. Friedman that Scher told him he had bought the Roanoke store for Louis Frieden. Further details of incriminating testimony seem unnecessary to show that the case was one for the jury.

Exception was taken to the first paragraph of the following charge of the District Judge:

"Consider the evidence that has been adduced, start at the beginning when those men went into business, their course of dealing from that time as it has been disclosed on the witness stand by the evidence, finally winding up with a shortage or shrinkage as you may call it, their explanation of how it occurred, and if you are convinced as a result of a fair consideration of all of that evidence that that shrinkage has not been accounted for, that their explanation is not reasonable and does not commend itself to you, that this property which they had and which they now owe money for is unaccount-

ed for, and that those circumstances irresistibly lead your minds to conclude that the whole thing was a guilty scheme to defraud their creditors, then I am sure you won't hesitate to find them guilty.

"On the other hand, if you think that this unfortunate ending of their business venture was due to ignorance, was due to the larceny on the part of their clerks if there was larceny unknown to them, was due to their inability to handle a large concern of this kind, was due to their inaccuracy in bookkeeping, was due to their extensive overhead charges, was due to their improvidently paying out money to creditors created prior to this indebtedness as in the case of $30,000 claimed to have been paid out to Louis Frieden, and that it was paid out in good faith, if you are satisfied as I say, as a result of that evidence, that those things are the responsible cause of this trouble and failure, then, of course, gentlemen of the jury, they are entitled to be acquitted."

This instruction seems to vindicate itself. The government has proved beyond dispute a very large apparent shrinkage of assets unaccounted for on the books of the firm which had gone somewhere. The defendants had undertaken to account for the shrinkage in the manner indicated in the instruction. The real practical issue in the case was whether they had succeeded. If they had not, there was no escape from the inference that they had concealed the assets unaccounted for.

The evidence of West as to the correctness of his account of goods sold was under the circumstances admissible, although he did not himself make the book entries. Du Pont v. Tomlinson (C. C. A. Fourth Circuit) 296 F. 634.

A. Lee Rawlings, an expert accountant, was asked: "Should there, from the evidence and from the knowledge you have of this case and from your experience as a certified public accountant, be any proper deductions therefrom in arriving at the transactions of this firm?" This indefinite question was excluded. But the court ruled the witness could testify fully as to anything in the books tending to explain the shortage of assets. Counsel declined to press the matter further. We perceive no ground for saying that any competent evidence of the witness was excluded.

The evidence tended to show that the defendants conspired to defraud creditors by concealing assets in anticipation of bankruptcy, by the continuation of the conspiracy after bankruptcy, the making of false sched-

ules, and false oaths after bankruptcy; the concealment of assets before bankruptcy and the continuation of the concealment after bankruptcy. There was no error in the exclusion and rejection of testimony or in the instructions to the jury. It follows that there is no ground to disturb the verdict and judgment.

Affirmed.