REIMER-GROSS CO. et al. v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit.
June 10, 1927.

No. 4833.

1. Criminal law ☞290—In determining whether indictment is sufficient to allow accused to plead judgment in defense of another prosecution, parol testimony is admissible to identify former offense.

In applying rule that indictment is insufficient, which fails to set out facts distinctly enough to enable accused to plead judgment thereon in defense of another prosecution for same offense, parol testimony may assist in identifying former offense.

2. Indictment and information ☞71—Indictment should charge offense with sufficient definiteness to inform accused with reasonable certainty with what he is charged.

Government, in presenting indictment, should make its charge sufficiently definite to inform accused with reasonable certainty with what he is charged.

3. Bankruptcy ☞495—Evidence of shortage during year preceding bankruptcy held insufficient to support conviction for procuring bankrupt corporation to conceal property from trustee (Penal Code, § 332 [Comp. St. § 10506]).

Evidence *held* insufficient to support conviction under Penal Code, § 332 (Comp. St.

§ 10506), for procuring bankrupt to conceal property from trustee, where property held by bankrupt corporation a year before bankruptcy was not accounted for.

**4. Statutes ⬡⟿241(1)—Criminal statute is not construed to include conduct at which it was not aimed.**

Criminal statute will not be construed to include conduct at which it was not clearly aimed.

Knappen, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Armin Gross was convicted of concealing property of the Reimer-Gross Company from its trustee in bankruptcy, and he brings error. Reversed.

H. Frank Van Lill, of Cleveland, Ohio (Orgill, Maschke & Wickham, of Cleveland, Ohio, on the brief), for plaintiff in error.

D. C. Van Buren, Asst. U. S. Atty., of Cleveland, Ohio (A. E. Bernsteen, U. S. Atty., and M. E. Evans, Asst. U. S. Atty., both of Cleveland, Ohio, on the brief), for the United States.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. Plaintiff in error was the sole owner of the Reimer-Gross Company, which was adjudged a bankrupt August 4, 1925. He was charged in the court below with concealing property of the bankrupt from its trustee. The property alleged to have been concealed, as stated in the indictment, consisted of "certain goods, wares, merchandise, money credits, and other things of value in the amount of $10,000 or more, a further and more particular description thereof being to the grand jurors unknown."

Upon the trial the government relied in the main for its proofs upon a financial statement made by Gross showing assets in the hands of the Reimer-Gross Company of the value of $31,647.76 on September 8, 1924, upon an inventory of the merchandise turned over to the trustee of the cost value of $25,-984.50, and upon the books of the bankrupt, from which it appeared that it purchased, between September 8, 1924, and the date of bankruptcy, goods amounting to $84,816.33, and sold during that period goods of the value of $48,870.49, leaving unaccounted for something over $40,000. There was also evidence to the effect that within the year preceding the adjudication Gross had delivered goods, sometimes as often as two or three times a day, to a place in Cleveland where bankruptcy sales were conducted. Upon this evidence the defendant was convicted. He prosecutes error, contending that the indictment was insufficient, and that the evidence did not warrant a conviction.

[1] The argument against the indictment is that it failed to set forth the facts distinctly enough to advise the accused with reasonable certainty of the charge and to enable him to plead a judgment thereon in bar of another prosecution for the same offense. This rule in its latter aspect is admittedly not so strict as wholly to exclude the right of resort to parol testimony to assist in identifying the former offense. Bartell v. United States, 227 U. S. 427, 33 S. Ct. 383, 57 L. Ed. 583. Accepting this as the test, the question is whether the allegation that defendant concealed "certain goods, wares, merchandise, money credits, and other things of value in the amount of $10,000 or more, a further and more particular description thereof being to the grand jurors unknown," was sufficient.

The fact that the government relied in its proofs upon a shrinkage in assets during the year preceding the bankruptcy bears upon the question we are considering only so far as it indicates that the lower court thought the indictment broad enough to include all kinds of property of whatever value in the general classes mentioned. This lack of identity or definiteness is the thing of which defendant complains. There is no theory, so far as we are advised, upon which the government ought to have been permitted to prove the concealment of property other than that or in excess of that alleged in the indictment. That no specific property of the value of $10,000 could be separated from what the government claimed was a total concealment of assets worth $40,000, and that it did not attempt to and could not identify any of the property, only serve to illustrate the generality of the averment. Every term used—i. e., goods, wares, merchandise, money credits, and other things of value—is general. The first three would include everything kept in a store or subject to any kind of mercantile trade. "Money credits" is even more indefinite and general, and "other things of value" is so indescribably broad as to be practically all-embracing. None of them signifies anything specific, or is susceptible of a limited class identification.

Section 29b of the Bankruptcy Act (Comp. St. § 9613) denounces as an offense the concealment by a bankrupt, from his trustee, "of the property belonging to his estate in bankruptcy." If the word "property" were substituted for the words "goods, wares, mer-

chandise, money credits, and other things of value," the indictment would be hardly more general or less informative than as drawn. It would not, we dare say, be contended that such an indictment in the language of the statute was good. In Ledbetter v. United States, 170 U. S. 606, 18 S. Ct. 774, 42 L. Ed. 1162, the statute defined "the offense with the requisite precision"; and in United States v. Hess, 124 U. S. 483, 8 S. Ct. 571, 31 L. Ed. 516, it was said, "Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." The latter opinion was cited in Armour Packing Co. v. United States, 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681, where it was again stated that the "charge must be sufficiently definite to enable him [the accused] to make his defense and avail himself of the record of conviction or acquittal for his protection against further prosecutions. * * * And it is true it is not always sufficient to charge statutory offenses in the language of the statutes, and, where the offense includes generic terms, it is not sufficient that the indictment charge the offense in the same generic terms, but it must state the particulars." Other cases bearing on the subject are United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; United States v. Simmons, 96 U. S. 360, 24 L. Ed. 819; United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135; Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606.

An indictment may be indefinite in two respects, as pointed out in Leonard v. United States, 18 F. (2d) 208, in the character of the acts charged, and the identifying circumstances. The indictment in that case charged the sale of "intoxicating liquor," a term defined in the statute, and we sustained the indictment, having in mind the provision in the act for a bill of particulars, by which there was evidenced an intent, so far as permitted by the Fifth and Sixth Amendments, to provide for simple and brief indictments under that act. A certain amount of particularity, no doubt, is required by the Constitution—just what has never been authoritatively determined —and yet there is a considerable additional particularity required by the body of law and decisions that has grown up. This additionally established requirement Congress could modify as to any selected class of prosecutions, and the rather extreme degree of uncertainty approved by the Leonard Case does not go beyond what we thought was the congres-

sional intent as to indictments under that act. Neither this nor any other case goes so far as to validate an indictment that is lacking in the fundamentals of criminal pleading, and of course it has never been thought that a bill of particulars can make valid an indictment that is otherwise bad.

Most of the cases upon which the government relies deal, as an examination will show, more with the quantum of evidence than with the sufficiency of averment. It does not appear in Arine v. United States (C. C. A.) 10 F. (2d) 778, and Frieden v. United States (C. C. A.) 5 F. (2d) 556, what the averments of the indictments were; the cases being decided on the evidence. In each of them the proof was decidedly more definite, both as to character of acts and identifying circumstances, than in the case at bar. That, we think, however, is immaterial here, as we likewise think those cases are to be given little weight, because wholly lacking in any considered conclusion touching the precise question under consideration. While there are general statements in Rudner v. United States (6 C. C. A.) 281 F. 516, Huth v. United States (6 C. C. A.) 295 F. 35, Dierkes v. United States (6 C. C. A.) 274 F. 75, and Tea & Spice Co. v. United States (6 C. C. A.) 288 F. 475, indicating that an indictment framed in the language of the statute is sufficient, there was a distinct dissimilarity between each of those indictments and the one involved here, none of them being so indefinite or general in its terms. The first two cases arose under the National Prohibition Act (Comp. St. § 10138¼ et seq.), and the conclusions in the other two were rested on the Armour and Hess Cases.

In Keslinsky v. United States (C. C. A.) 12 F. (2d) 767, it was held that an indictment charging the bankrupt with concealing certain goods, wares, moneys, merchandise, shoes, and personal property belonging to the bankrupt, when considered in connection with the information furnished the accused by the district attorney, was sufficiently definite. United States v. Greenbaum (D. C.) 252 F. 259, and Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L. Ed. 390, were cited in support of the conclusion. In the Greenbaum Case the property that was alleged to have been concealed was women's and children's clothing, ready-to-wear garments, general clothing, dry goods, and merchandise, being the kind and description manufactured and handled by Greenbaum at his place of business, 285 Gratiot avenue, in the city of Detroit. The description was obviously less indefinite than "goods, wares, merchandise,

money credits, and other things of value." The Dunbar Case arose under a revenue statute, which made it an offense to introduce into the United States "any goods, wares, or merchandise" subject to duty by law without paying or accounting for the duty thereon. The allegation was that the accused had introduced into this country from Canada "certain goods, wares, and merchandise, to wit, a large quantity of prepared opium, being about 1,400 pounds of prepared opium." In holding the indictment good the court remarked that, while it might not be sufficient to use only the words of the statute, "goods, wares or merchandise" (the same words used here, with others even more general), in "describing the property charged to have been smuggled, because they are too general and do not sufficiently identify the property, yet any words of description which make clear to the common understanding the articles in respect to which the offense is alleged are sufficient."

[2] Notwithstanding the decision in the Keslinsky Case, and the implications arising from other cases cited by the government, where somewhat analogous questions were decided on the evidence, we do not doubt that the plainest principles of criminal pleading require that an indictment should be sufficiently definite to inform the accused with reasonable certainty with what he is charged. There seems to be nothing in the indictment in question that put the defendant on notice of the articles or things he was charged with concealing. The concealed property, as we have seen, was referred to in terms almost as broad as the term "property" itself. That term is generic and may be divided into innumerable classes; "goods, wares, and merchandise" are similarly subject to many subdivisions and classifications. They are broad enough to permit proof of almost every species of personal property which one could hold or own. There are no comparative references, from which the character of the property could be inferred or separated into articles susceptible of identification. We doubt that such an indictment is good, yet we turn to a consideration of the proof as demonstrating the extreme degree of generality upon which the indictment was based, preferring to let our conclusions rest on the insufficiency of that proof to establish the offense which the statute was intended to denounce.

[3] The accused was not a bankrupt, but, if he induced or procured the bankrupt to conceal from its trustee property belonging to the bankrupt estate, he is chargeable with the offense as a principal. Comp. St. § 10506. It was necessary to his conviction that it be shown that the concealment occurred while the Reimer-Gross Company was a bankrupt. The evidence shows an unexplained shortage occurring during the year preceding the adjudication, with circumstances from which it might be inferred that the accused, during that year, sold or misappropriated some of the assets of the bankrupt company. There was no evidence of any concealment of assets by the accused after the adjudication, unless the unexplained shortage occurring during the preceding year created a presumption to that effect. The jury was permitted to infer from such shortage that there was a concealment after the adjudication, as necessarily there must have been before the statute could have been violated. There are many ways in which the shortage might have occurred, through losses or dissipation of the money, in none of which would there have been the concealment denounced by the statute.

[4] The statute does not penalize failure to account for assets held prior to the bankruptcy, but concealment of property in the possession or control of the bankrupt after his bankruptcy. It is, of course, a familiar rule that a criminal statute will not be construed to include conduct at which it was not clearly aimed, and we have no trouble in believing that it was not intended by the statute in question to punish a bankrupt who could not account for all the property that he had a year before the bankruptcy. It is quite true that in such failure to account there may be a quasi criminal liability to be determined through a turn-over order or a contempt proceeding, which at most is a misdemeanor, punishable in the discretion of the court; but this section of the Bankruptcy Act was obviously intended to punish the felonious act of concealing property belonging to the bankrupt estate after the adjudication in bankruptcy and not to penalize failure to account for property held by the bankrupt a year—or, if a year, why not five—before the bankruptcy. The failure to account for such property, with other circumstances in this case, does not constitute substantial evidence to support a conviction.

Judgment reversed.

KNAPPEN, Circuit Judge (dissenting). I am unable to concur in the reversal of this case. I think the indictment sufficient, and that it falls within the rule, sustained by a long line of authorities, that generally, in an indictment for a statutory offense, it is sufficient to describe the offense in the words of the statute, and it is for the defendant to show that greater particularity is required by rea-

son of the omission from the statute of some element of the offense. Ledbetter v. United States, 170 U. S. 606, 612, 18 S. Ct. 774, 42 L. Ed. 1162; Armour Packing Co. v. United States, 209 U. S. 56, 57, 84, 28 S. Ct. 428, 52 L. Ed. 681; Dierkes v. United States (C. C. A. 6) 274 F. 75, 77, 78, 79, and headnote No. 2, certiorari denied 257 U. S. 646, 42 S. Ct. 55, 66 L. Ed. 414; Rudner v. United States (C. C. A. 6) 281 F. 516, 518, certiorari denied 260 U. S. 734, 43 S. Ct. 95, 67 L. Ed. 487; Newton Tea & Spice Co. v. United States (C. C. A. 6) 288 F. 475.

I think the indictment sufficiently states the statutory elements, and is as definite as the indictments in some of the cases above cited. I cannot think that the failure of the indictment to state how the $10,000 in value alleged to have been concealed was made up— how many and what specific items of different kinds of merchandise—renders the indictment insufficient. Keslinsky v. United States (C. C. A. 5) 12 F.(2d) 767. In the nature of things, such detailed information on the part of the government would be impossible to obtain. The testimony indicates that for a considerable period antedating bankruptcy defendant was engaged in wrongful conduct, and, inferably, in direct preparation for the expected bankruptcy.

In my opinion, the record, considered in its entirety, presents no reversible error. I think there was substantial evidence to support the conviction. The case seems to me to fall within the mischief sought to be prevented by section 269 of the Judicial Code, as amended by Act Feb. 26, 1919 (Comp. St. § 1246), which requires the court to give judgment "without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties," and section 1691, U. S. Comp. Stat. 1916, which provides that "no indictment found and presented by a grand jury in any * * * court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."