### RAND v. UNITED STATES. *
#### No. 4363.

Circuit Court of Appeals, Third Circuit.
Dec. 13, 1930.

Rehearing Denied Feb. 14, 1931.

Harry Shapiro, of Philadelphia, Pa., for appellant.

Paul Freeman, Asst. U. S. Atty., and Calvin S. Boyer, Acting U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON and DAVIS, Circuit Judges, and AVIS, District Judge.

AVIS, District Judge.

Appellant, Pincus Rand, was indicted by the grand jury of the Eastern District of Pennsylvania charged with the unlawful concealment of property belonging to his bankrupt estate.

Appellant, individually and trading as Rand Manufacturing Company, was engaged in business in Philadelphia. On August 22, 1928, an involuntary petition in bankruptcy was filed against Rand, and he was adjudged a bankrupt on September 12, 1928.

To sustain the indictment, Joseph Karp was called as a witness, who testified that he was a certified public accountant, living in Brooklyn, N. Y., and that he had considerable experience in examining books of account of garment manufacturers; that he had carefully examined the books of appellant for the purpose of ascertaining the amount of purchases of merchandise, its value and the amount and value of sales of merchandise and finished products, in order to determine if the bankrupt had concealed or illegally disposed of any portion of the merchandise so purchased.

He further testified that between June 1, 1928, and August 22 of the same year appellant had purchased 72,129 yards of dress material of a wholesale value of $40,306.77;

*Rehearing denied February 14, 1931.

that of this yardage 1,555 yards had been sold in the piece, leaving a net yardage of 70,574; that the total number of dresses sold for the same period was 9,960; and that appellant purchased during that period 1,056 dresses, leaving 8,904 dresses disposed of from the materials purchased. In addition, he testified that 306 skirts had been sold during this period, and that the receiver's inventory showed 236 dresses on hand after his appointment. This made a total of 9,446 garments made up by appellant during the period from June 1, 1928, to August 22, 1928. The witness figured these garments on the basis of 5 yards per garment, showing a total of 47,230 yards. The witness added to this 568 yards shown in receiver's inventory, and 32 yards for a job sale shown on the books, making a total of 47,830 yards accounted for. Deducting this amount from the total purchases of 70,574 yards leaves a balance of 22,744 yards of material unaccounted for.

This witness further testified that all of his computation was made from the books of appellant, supplemented by his personal knowledge that each dress would not take more than 5 yards of material. His right to testify to these facts is challenged, but appellant, although apparently an experienced man in the manufacture of such garments, did not offer himself as a witness to contradict the statement, nor did he produce any other witness to show the amount of material necessarily used in making the dresses.

It is apparent from the testimony of this witness that large quantities of material were purchased in excess of that disposed of, and no explanation has been made.

The witness, Rubin, corroborating the statement of Karp, testified that 5 yards of dress material was the average quantity needed per dress to manufacture the most of the garments made by appellant; that some few manufactured would take more yardage, and some less.

The testimony further shows that the value of the 22,744 yards unaccounted for, at the average cost price of materials, of 47.1 cents per yard, was $10,712.66.

The witness Karp also testified to a state of facts showing value of purchases, amount expended for labor, and total sales, which indicated that appellant should have had on hand at time of bankruptcy, in cash and/or materials, a value amounting to $22,832.94, unaccounted for to the receiver. Whatever this amount may have been, and whatever the waste of materials was in cutting, it is apparent that no accounting was given for a large quantity of material.

The testimony of the receiver is that shortly after the appellant got into financial trouble he visited appellant's place of business and had a conversation with him; that appellant then advised the receiver that he had lost through robbery in merchandise and dresses around $20,000. At this time appellant exhibited to the witness a hole cut in the ceiling through which, it was alleged, the robbers had gained entrance to the factory, and through which the materials and dresses had been removed.

Other witnesses for the government testified to conversations with appellant, during which appellant told them that he had been robbed; that the thieves had gained entrance through a hole in the ceiling of his place of business, through which a ladder had been let down from the upper floor, and by means of which the merchandise had been removed. One witness also testified that appellant said there had been two robberies, the thieves gaining entrance in one instance by breaking the door, and the other time through the hole in the ceiling.

The proof shows that appellant claimed his loss was $20,000. The undisputed proof is that the hole in the ceiling was rectangular and not larger than 21 by 22 inches in size, and that a joist, 3 inches in width, ran across the center of the hole, leaving openings on either side 9 by 22 inches, that the ladder found in appellant's place of business could not be passed through this hole, and that it would have been impossible to let the ladder down that way from the upper story. It appeared also, by the testimony, that the floor of the upper story was covered with dust and dirt, and that, when first seen after the alleged robbery, by an outsider, there were no footmarks on the floor, such as would have been made by persons removing material through the hole, or in cutting the hole.

The first question to be decided goes to the competency of the testimony of the witness Karp, who analyzed the books of account of appellant. His testimony as to what the books actually showed was properly received, and his computation of purchases and sales was entirely from the record, and it was conceded that his testimony of fact was taken from the books of appellant. The quantities testified to as being used for the manufacture of individual garments was from his independent knowledge, and the result obtained was only a question of mathematics. The independent testimony of the

witness Rubin as to the yardage required for the making of individual garments, taken by itself or as corroborative, established what the average yardage was to a reasonable certainty.

We find that it was not error for the trial court to submit the accountant's testimony to the jury.

Error is assigned upon the admission of the testimony of statements made by appellant that he had been robbed, and the explanation of the circumstances surrounding the alleged robbery. Appellant stated to one of the witnesses that the value of all of the merchandise stolen was $20,000; to another that the value of materials, etc., stolen July 29, 1928, was $750. The description of the hole in the ceiling, the ladder which appellant claimed was used by the robbers to enter his place of business through the hole, and the dusty and dirty condition of the floor of the upper story, without footprints, indicates quite conclusively that the robbery could not have been accomplished in the manner claimed by appellant. Large quantities of merchandise of appellant disappeared. He accounts for the disappearance by claiming a robbery, but the circumstances surrounding the alleged robbery are, to say the least, suspicious. It was proper to submit all of these facts to the jury to determine whether his statement as to the robbery was true or false, and, if false, whether it led to the conclusion of guilt or innocence as to the charge of concealment. See Schonfeld v. United States (C. C. A. 2) 277 F. 934, 935.

The statements of fact made by appellant are not in the nature of a confession, and are not governed by the law applying thereto.

We have disposed of all matters raised by the assignments of error and argued in appellant's brief. On the whole record, the judgment is affirmed.