## UNITED STATES v. ROSENBERG et al.
### No. 110.

Circuit Court of Appeals, Second Circuit.

Nov. 3, 1944.

George Gordon Battle, of New York City (William Lindenbaum, of New York City, on the brief), for appellants.

Mario Pittoni, Asst. U. S. Atty., of Brooklyn, N. Y. (T. Vincent Quinn, Acting U. S. Atty., and Vine H. Smith, Asst. U. S. Atty., both of Brooklyn, N. Y., on the brief), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Defendants, Morris Rosenberg, Victor Rosenberg, and Julius Aronoff, appeal from a judgment upon verdict of a jury convicting them of fraudulently concealing and transferring property from the trustee in bankruptcy of the Bergen Furniture Factories, Inc., of which Morris Rosenberg was president, and Victor Rosenberg vice-president and treasurer, in anticipation of bankruptcy and to defeat the Bankruptcy Act, contrary to § 29, sub. b(1, 6), 11 U.S.C.A. § 52, sub. b(1, 6). Defendants' grounds of appeal in substance are (1) absence of a prima facie case against them to justify submission of the issues to the jury, (2) various errors in the court's charge, and especially its failure to charge with sufficient particularity, and (3) the generally prejudicial and erroneous nature of the court's rulings and remarks.

The case for the prosecution concerned a small furniture business, the Bergen Furniture Factories, Inc., located at 51 Bergen Street, Brooklyn, New York, and incorporated on October 21, 1940, with the two Rosenbergs as officers, to take over a lease of the premises acquired on October 4, 1940, by Aronoff. At incorporation it showed total assets of $12,000 and no liabilities; but when it closed its short business life, by assignment on May 23, followed by bankruptcy on May 27, 1941, its schedules showed net liabilities over assets of nearly $10,000, or a decline in worth of nearly $22,000. The profit and loss statement prepared by the Bergen accountant showed a net loss of $17,241.32. And it further appeared that the company had bought less than $30,000 of merchandise all told. This brief, but not entirely uneventful, career naturally provoked inquiry; a turnover order against the Rosenbergs having produced only $250 from Victor Rosenberg, there ensued a lengthy investigation by FBI Agent Pardo, an accountant and a lawyer, which resulted in this prosecution. The evidence offered on behalf of the United States was designed to show several specific instances of concealment and transfer of assets, supplemented by an extended analysis of the business by Pardo in the light of such books as were available. Defendants Rosenberg took the stand and, in addition to denials, attributed the business decline largely to an accident to Morris on March 30, 1941, when he broke his legs, which took him away from the active direction of the business. Defendant Aronoff, who did not testify, claimed to be entirely unconnected with the company; but, as will be indicated, certain of the specific instances relied on by the prosecution directly involved him.

Of the specific instances of statutory violation relied on by the prosecution, first there was evidence tracing $788 received from an auctioneer, Puchkoff, on or about May 10, 1941, for the sale of Bergen furniture, to a deposit two or three days thereafter in the bank account of Anna Aronoff, wife of defendant Aronoff. No record of receipt of this amount appeared on the books. Second, the prosecution showed five sales of furniture, the proceeds of which, amounting to about $900 and at least in part received after the appointment of the receiver, remained unrecorded on the books. Under the most favorable interpretation of the evidence, only a small amount of these proceeds could be said to have been legitimately expended. Third, it was shown that starting on or about November 27, 1940, and lasting through June 4, 1941, defendants conducted a series of auction sales through an auctioneer named Pollak, which resulted in a payment of $5,000 to Aronoff; and it is undisputed that at least $1,000 of the property so sold belonged to the Bergen firm. Yet none of these sales were recorded on the Bergen books. Finally, there was not a complete record of further sales, the proceeds of which amounted to $880, made through an auctioneer named Bergstein.

In addition, the prosecution attempted to prove a merchandise shortage. Pardo testified that he found a shortage of 507 units of furniture or 677 individual pieces, which, based on the cost price indicated on the purchase invoices of the vendor, amounted to $8,427.29. He concluded that, had either the money or merchandise been on hand on May 14, 1941, the loss on the books of the company would have been merely $8,500, instead of the $17,000 therein recorded.

As further background material, the prosecution offered evidence that from its inception the company's business was conducted in such an unusual way and its books kept so inadequately as to permit the inference that this was done with an eye toward future bankruptcy. Thus, Bergen's first financial statement, sent through

the mail, showed $12,000 in assets and no liabilities, while, in truth, it owed at least $500 to a Mr. Cory, and $1,500 to defendant Aronoff. Moreover, in the month and a half before bankruptcy defendants made their greatest purchases, consisting of $4,-632.25 in April, and $1,695.88 during a period of fourteen days in May, 1941, while prior purchases had never exceeded $3,400 for a single month. In addition, there was the fact above referred to of a loss of approximately $22,000 on purchases of less than $30,000 worth of merchandise.

■ Defendants base their contentions that a verdict should have been directed in their favor, in part on certain farfetched alternative explanations of the absence of specific receipt items from the books and of the actual disposal of the proceeds from transferred property, largely supported by the testimony of defendants themselves, and in part on a challenge of Pardo's findings of a merchandise shortage. Typical explanations offered by defendants are that, while some of the items were not entered in the regular cashbook, they were received after such books were no longer kept, and entered in Victor Rosenberg's daily cashbook, which was unaccountably missing; that some of the proceeds were used to pay the company's debts, including back salaries of the two Rosenbergs; and that some of the merchandise did not belong to Bergen. None of these explanations, however, applied to all of the instances cited by the prosecution and they were largely based on testimony by defendants, which might have been disbelieved by the jury. United States v. Marino, 2 Cir., 141 F.2d 771, certiorari denied 65 S.Ct. 48; United States v. Lo Biondo, 2 Cir., 135 F.2d 130. There was thus strong evidence to justify a conclusion of guilt, and the question of acceptance or rejection of defendants' explanations was properly for the jury. Cohen v. United States, 4 Cir., 67 F.2d 449.

The only serious question is with respect to the evidence as to the merchandise shortage. Pardo's method of arriving at his findings was to count the furniture mentioned in the opening inventory, to add thereto additional furniture purchased, and to subtract from the total the furniture sold according to the Bergen sales invoices, the furniture sold and not recorded on the sales invoices, but recorded on the records of Bergstein and Pollak, and the furniture on hand at the close of the business. Defendants attack this method as being based on certain assumptions and inferences by Pardo, for which they would prefer to substitute inferences and explanations of their own, and as being consequently not conducive to a mathematically accurate finding, such as they claim is required to establish a merchandise shortage. But even in the case of Rand v. United States, 3 Cir., 45 F.2d 947, relied upon by them as supporting the proposition that the finding of a merchandise shortage by an expert accountant must be a matter of mathematics only, the court allowed an inference by the Government's expert as to the amount of cloth that had been used for each individual garment.

■ We think such inferences are permissible in a case like this, where the books are wholly inadequate and the basic facts are such as to justify a jury in making like inferences. Thus, against defendants' objection to the adding of twenty-nine units listed on fourteen purchase invoices dated before October 26, 1940, to the merchandise units listed in the inventory of that date—which they claim already included the added units—stands the fact that these units were paid for or set up as company obligations subsequent to that date, while the company's financial statement as of that date showed no liabilities, allowing the jury to draw the obvious inference that all the merchandise listed in the inventory was fully paid for and hence could not have included the merchandise in question. Defendants contend further that fifteen units of merchandise were returned to Baumann & Levy at the time of the bankruptcy. Yet, while it is admitted that this return would leave cancelled any obligation of Bergen to Baumann & Levy, defendants' schedules in bankruptcy showed $1,087.30 as owing to that company. We see no reason why this fact, together with the absence of a written receipt, does not justify the inference that this merchandise was never returned.

Defendants' further contention that the entire method of determining the merchandise shortage was unsound in disregarding unidentified purchases and sales is answered by the fact that these almost cancelled each other in amount and could, therefore, have been reasonably disregarded, both by the Government's expert and by the jury. On the whole, it is clear that Pardo conducted a thorough investigation and that his assumptions and inferences, necessitated by inadequate records, could have been justifiably accepted by the jury.

There is no reason why the keeping of inadequate books should pay dividends on a later criminal prosecution.

Hence the case for the prosecution was quite adequate. Its evidence of the sending of false financial statements through the mails and the overpurchase of merchandise with knowledge of impending insolvency was competent to show concealment and transfer of assets with intent to do so in anticipation of bankruptcy. Levy v. United States, 8 Cir., 35 F.2d 483; Beaux-Arts Dresses v. United States, 2 Cir., 9 F.2d 531; United States v. Weinbren, 2 Cir., 121 F.2d 826; Cohen v. United States, supra. It was supported by the specific instances, including the auction sales, which, though begun before bankruptcy, continued thereafter and hence were a violation of the statute. United States v. Shapiro, 7 Cir., 101 F.2d 375, certiorari denied Shapiro v. United States, 306 U.S. 657, 59 S.Ct. 774, 83 L.Ed. 1054; United States v. Knickerbocker Fur Coat Co., 2 Cir., 66 F.2d 388, certiorari denied Zuckerkandel v. United States, 290 U.S. 673, 54 S.Ct. 91, 78 L.Ed. 581; United States v. Olweiss, 2 Cir., 138 F.2d 798, certiorari denied Olweiss v. United States, 321 U.S. 744, 64 S.Ct. 483; United States v. Weinbren, supra; Reinstein v. United States, 2 Cir., 282 F. 214, certiorari denied 260 U.S. 722, 43 S.Ct. 12, 67 L.Ed. 481. Finally, the prosecution adduced evidence of a merchandise shortage from which the jury could draw the necessary inference of guilt. Cohen v. United States, supra; Pincus v. United States, 3 Cir., 34 F.2d 282; Frieden v. United States, 4 Cir., 5 F.2d 556. It needed to show nothing more, and the defendants' evidence was obviously not conclusive and did not justify a directed verdict in their favor.

Defendants object to the court's charge to the jury on the grounds that it should have defined more fully such words as "knowingly," "fraudulently," "concealed," and "transfer," and that it should have contained a discussion of the evidence. The charge was in fairly general terms, but we see no reason why it was not adequate for the case presented. We therefore find no error in refusal of defendants' requests for discussion of particular items of the evidence. Cf. Hilliard v. United States, 4 Cir., 121 F.2d 992, certiorari denied 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503. See also United States v. Olweiss, supra, 2 Cir., 138 F.2d at page 800.

Defendants further contend that the court was in error in charging the jury that it was no defense that furniture concealed from the trustee in bankruptcy or the proceeds thereof may have been used in the payment of debts. But the court corrected this charge in accordance with defendants' only request, to the effect that it be amplified by being made applicable only to property or proceeds in defendants' possession after the appointment of the receiver or trustee; and with this corrected charge they seemed satisfied. The charge thus finally made, moreover, was not erroneous. Hersh v. United States, 9 Cir., 68 F.2d 799; Kalin v. United States, 5 Cir., 2 F.2d 58; Corenman v. United States, 2 Cir., 188 F. 424.

Defendants' final contention that the rulings and remarks of the court below were prejudicial to them finds no support in the record. The judge appears to have been wholly fair in his attitude throughout the trial.

Convictions affirmed.