## In re REIDY.

District Court, D. New Jersey.
June 1, 1935.

Giordano, Golden & Hurley, of Long Branch, N. J., for the bankrupt.

Mahlon A. Freeman, of New York City, for objecting creditor.

FORMAN, District Judge.

This matter is here on exceptions by the Boyertown Burial Casket Company, a creditor, to the report of the referee in bankruptcy advising the discharge of the bankrupt, David B. Reidy.

The bankrupt is a licensed embalmer and conducted an undertaking and funeral business as an individual for some years.

He filed ·his individual voluntary petition in bankruptcy on January 13, 1934.

About nine months prior thereto, in April of 1933, a certificate of incorporation was filed creating David B. Reidy, Inc. The certificate, signed by the bankrupt, disclosed that he subscribed for one share, Mabel M. Miller for eight, and Mollie Kaplan for one.

In November of 1933, bankrupt discontinued the operation of his business as an

individual, and it was from thence operated by said corporation. The evidence tends to show that whatever success that came to the corporation was entirely due to the bankrupt, and that the corporation continued to use the books of the bankrupt and carried on the business in the lower floor of the house occupied by him as a residence.

The objecting creditor seems to be justified in its inference that the bankrupt is not entitled to a discharge for the reasons that he assigned, concealed, and omitted to schedule certain of his property. The bankrupt had failed to mention anything concerning his interest in the business being carried on by David B. Reidy, Inc., when he filed his schedules in January of 1934.

Obviously the bankrupt was attempting to carry on his business despite his creditors. His testimony showed the incorporation in the spring of 1933. The corporation, from November of that year, occupied his same premises and individual office. He was made president and treasurer; he says that he received no salary, but that he collected out of the corporation "enough to live on." Accounts due to the corporation were paid to him. He drew the checks. He alone signed them. The corporation did business with his property and some borrowed equipment. It had no separate equipment of its own. The desk the corporation used was his individual property before the incorporation and the corporation used the telephone listed in his individual name. He permitted to remain on the front of the building his individual name and the nature of the business.

It is evident from the testimony that the act of incorporation was of little moment to the bankrupt. He testified that he forgot the names of his associate officers, and that while he was a director, and not only a director, but president and treasurer of the corporation, he owned no stock in the corporation. Yet he signed the certificate of incorporation, plainly indicating that he subscribed for at least one such share out of ten.

It was admitted in the testimony that the corporation had accounts receivable of some $800. It probably owed creditors debts against these, but no mention of the assets or the liabilities of the corporation was made by the bankrupt in his declaration of bankruptcy.

The corporation was obviously a fictitious vehicle. It was the bankrupt and the bankrupt was the corporation. It is not enough to justify his assertion that he owned no part of the corporation to state that his subscription to stock was still unpaid.

Had he acted honestly at the time of his adjudication he would have disregarded the corporate character with which he had camouflaged his business and would have declared in his schedule the assets and liabilities as his own, or else he would have added frankly therein words to the effect that his estate included all of his right, title, and interest, whatever that might have been, in and to the David B. Reidy, Inc., or any share therein. He did not choose either of these courses, and was, by his silence in this respect, guilty of concealing property from his creditors.

The bankruptcy law provides a medium whereby a harassed debtor may obtain absolute remission from his debts and be restored to the community with an opportunity to regain an economic foothold. On the other hand, he is expected to reciprocate with an honest disclosure of all of his assets so as to permit an equitable and fair distribution of the same among all of his creditors. Only the bankrupt who has acted in good faith with the highest degree of candor ought to be relieved and discharged.

I am convinced here that the corporation existed for no reason other than to allow the bankrupt to defraud his creditors. The use of this lawful form constituted fraud factually as much as if the bankrupt had transferred property to another by the usual methods of the law for the purpose of preventing creditors from reaching his assets. The corporation had no more substance than if the bankrupt had continued to do business under another name.

Moreover, the bankrupt has shown such indifference to the rules of common honesty and disregard for the rights of his creditors that the court is forced to the conclusion that his intention was to hinder and defraud them. He has made no attempt to justify the existence of the corporation.

There is sufficient evidence to support the objections, and the bankrupt is not entitled to be discharged.

The exceptions to the report of the referee are sustained, and an order denying discharge will be entered.