**UNITED STATES of America,
Appellee,**

v.

**Michael STONE, Defendant-Appellant.**

**No. 354, Docket 26088.**

United States Court of Appeals
Second Circuit.

Argued June 10, 1960.

Decided July 18, 1960.

Rehearing Denied Oct. 3, 1960.

Irving Younger, Asst. U. S. Atty., Forest Hills, N. Y. (S. Hazard Gillespie, Jr., U. S. Atty., for the Southern Dist. of New York, and Otis Pratt Pearsall, Asst. U. S. Atty., New York City, on the brief), for appellee.

Palmer, Masia & Palmer, New York City, for defendant-appellant.

Before LUMBARD, Chief Judge, and HAND and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Michael Stone was engaged in the business of manufacturing and selling ladies' dresses. He did this through a corporation, Ellen-Joan Fashions, Inc. His wife Anita was the corporation's president, a director and sole stockholder; Michael was a director and had the title of secretary. In fact Anita performed no significant services for the corporation, which Michael ran. On June 24, 1955, Ellen-Joan Fashions, Inc. filed a petition for an arrangement under Chapter XI of the Bankruptcy Act; on November 17, 1955, it was adjudicated a bankrupt and New York Credit Men's Adjustment Bureau, Inc., hereafter the Bureau, was appointed trustee.

On August 7, 1958, a grand jury in the Southern District of New York returned an indictment charging Michael Stone with two offenses under 18 U.S.C. § 152. The first count charged that Stone had knowingly and fraudulently concealed from the trustee "property belonging to the bankrupt estate of Ellen-Joan Fashions, Inc., to wit, 1,823 dresses of the approximate value of $14,555.57." The second count charged that Stone had knowingly and fraudulently made a false oath in, and in relation to, a bankruptcy proceeding in that the statement of affairs filed in the Chapter XI proceeding of Ellen-Joan, which he had verified, "failed to disclose that repayments of loans had been made by the said debtor to Anita Stone * * * whereas, in truth and in fact, as the defendant then

and there well knew, such repayments of loans to Anita Stone had been made by the said debtor." After deliberating for seven hours during which it requested the exhibits and a reading of Stone's testimony, the jury found defendant guilty on both counts. Judge Levet, in an opinion, denied a motion to set aside the verdicts. He imposed sentences of 18 months' imprisonment on each count, the two sentences to be served concurrently.

Defendant contends there was not sufficient evidence to warrant a conviction on either count. He complains also of the court's failure to require the government to make his testimony before the grand jury available to him after the government had cross-examined him in regard to it. Some of the points now most heavily relied upon by appellant's counsel were first made only after the verdict or even on appeal; under Fed.R. Crim.Proc. 52(b), 18 U.S.C., we have thought it our duty to consider these, Screws v. United States, 1945, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (opinion of Mr. Justice Douglas); United States v. O'Connor, 2 Cir., 1956, 237 F.2d 466, 472. We would reverse the conviction on Count 1 if that were alone. However, since the sentences on the two counts run concurrently, the judgment must stand if the conviction on either count was proper. Lawn v. United States, 1958, 355 U.S. 339, 362, 78 S.Ct. 311, 2 L.Ed.2d 321, and we find no sufficient basis for disturbing the verdict on Count 2. Accordingly we affirm.

The government's case to substantiate the charge of concealment of assets from the trustee in Count 1 was this: Early in July 1955, accountants retained by the Bureau made an audit of Ellen-Joan. The start-off point was an inventory, taken by appellant on January 31, 1955, showing 816 dresses then on hand. The accountants added 13,658 dresses received from contractors (net after returns) between February 1 and June 24, 1955, making a total of 14,474 dresses to be accounted for. Sales (less returns) and dresses on hand on June 24 amounted to only 12,608. This left 1,866 dresses

unaccounted for. An officer of the Bureau testified that the shortage was discussed at several creditors' meetings relating to the proposed arrangement; that Stone first said he did not understand the reported shortage; that Stone's counsel asked for more time to explain this; and that at the creditors' meetings, the last of which was in late October or early November, there was continuous discussion "to clear up this question of the shortage and if that was cleared up they would discuss an adjustment. Otherwise they would entertain only a plan for a hundred per cent." A special agent of the Federal Bureau of Investigation testified that in May, 1957, Stone had told him on two occasions that the only explanation Stone could offer for the missing dresses was that they had been stolen while he was away on business trips. The government offered evidence that the physical arrangement of Ellen-Joan's premises made such a theft unlikely. It showed that the statement of affairs filed in the Chapter XI proceeding on June 24, 1955, answered "No" to Item 13, "Have you suffered any losses from fire, theft or gambling during the year immediately preceding the filing of the petition herein?" And an employee of Ellen-Joan testified that during the first half of 1955, he had made two deliveries to customers, totalling between 70 and 126 dresses, on Stone's instructions, for which no charge slips were prepared.

This testimony sufficed to support a finding that the operator of this one-man business had taken property belonging to it. However, the offense of which Stone was charged consists not simply in taking property belonging to the estate but in concealing it from the trustee, who was not appointed until November 17, 1955. It would be unlikely in the last degree that if Stone had taken 1,800 dresses between February 1 and June 24, he would still have had them on November 17. Hence the government's case necessarily rests upon the premise, which indeed defendant does not seem to challenge, that the indictment may be construed as

charging concealment of the dresses or their proceeds or, if not, that any variance may be disregarded. See Gerson v. United States, 8 Cir., 1928, 25 F.2d 49; United States v. Rosenblum, 7 Cir., 176 F.2d 321, 324, certiorari denied, 1939, 338 U.S. 893, 70 S.Ct. 239, 94 L.Ed. 548.

■■ However, that is by all odds the easiest problem; the difficult ones are whether there was enough evidence to warrant the jury in finding that Stone still had the proceeds on November 17, and, if so, that he concealed them from the trustee. On the former point we have been told, as to a similar issue concerning turnover orders, that "Under some circumstances it may be permissible, in resolving the unknown from the known, to reach the conclusion of present control from proof of previous possession." Maggio v. Zeitz, 1948, 333 U.S. 56, 65, 68 S.Ct. 401, 406, 92 L.Ed. 476; Hersh v. United States, 9 Cir., 1934, 68 F.2d 799 and Reiner v. United States, 9 Cir., 1937, 92 F.2d 823 held the inference impermissible upon the evidence there offered; but the government distinguishes those decisions on their facts, as the Ninth Circuit itself has done in Noell v. United States, 1950, 183 F.2d 334, where, however, the case for drawing the inference was stronger than here. United States v. Schireson, 3 Cir., 1941, 116 F.2d 881, 884, 132 A.L.R. 1157, is more troublesome for the government in this respect as is Reimer-Gross Co., v. United States, 6 Cir., 1927, 20 F.2d 36, whereas Lawand v. United States, 6 Cir., 1929, 33 F.2d 582, gives it some support. It is debatable whether Stone can properly be said to have practiced a "concealment" from the Bureau as trustee in view of the knowledge the Bureau had acquired on behalf of the creditors in the abortive Chapter XI proceeding, cf. Hersh v. United States, supra; we suppose he can be since he would be concealing the whereabouts of the property, assuming he had taken the dresses and still had them or their proceeds, even though the trustee was convinced of the taking. Authority is of little aid in cases such as this where slight differences of fact

and in the feel of the evidence may be of crucial significance; on the whole we think there was enough evidence to send Count 1 to the jury, United States v. Feinberg, 2 Cir., 140 F.2d 592, 594, 154 A.L.R. 272, certiorari denied, 1944, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562; United States v. Costello, 2 Cir., 1955, 221 F.2d 668, 671, although barely so. However, the defendant was entitled to an instruction clearly placing before the jury the issue of his possession of some of the property or its proceeds on November 17. Doubtless the judge would have given such an instruction if he had been asked; instead he charged that "evidence of a merchandise shortage permits an inference of guilt," which we deem insufficient on the facts here.

■■ Whether or not the conviction on Count 1 should be reversed on this ground although no proper request was made or exception taken, Fed.R.Crim. Proc. 52(b), it would have to be on the ground of the refusal of defendant's request for the grand jury minutes of his testimony. Stone took the stand in his own defense. Although admitting knowledge of some minor shortages in dresses, he denied that 1,800 were missing, saying this was simply what the accountants told him. The government sought to impeach this testimony by reading Stone the following question and answer from his grand jury testimony:

"Q. Now, at the time the petition was filed in June of 1955 a shortage of approximately 1,860 dresses was found? A. Yes."

Stone said, "I remember the question and the answer is probably there, but the answer is probably from the accountant who gave it to me." On redirect examination Stone's counsel asked "permission to examine the grand jury minutes at this time for the purpose of only examining the testimony of this gentleman to see what other testimony was given on the same score."; this was refused. We held in United States v. Cotter, 60 F.2d 689, 692, certiorari denied,

1932, 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575 that when the prosecution uses testimony of a defendant before the grand jury, the defendant must be allowed to inspect it. The judge's failure to grant defendant's request is understandable since the request was predicated in part upon a citation of United States v. Hiss, 2 Cir., 185 F.2d 822, where the charge was perjury before a grand jury. Despite the inapposite and misleading reference we think the point was sufficiently brought to the Court's attention, and, both for this reason and because of the plain error rule, the question is whether the refusal was prejudicial. The government says it was not, since the defendant himself supplied the reconciliation between his alleged admission of the loss before the grand jury and his denial of it at the trial, and the minutes would have done no better. We disagree. Inspection of the minutes, a copy of which this Court caused to be submitted to appellant's counsel for comment in his reply brief, reveals *inter alia* the questions and answers reproduced in the margin.[1] We cannot be certain that this objective demonstration of the consistency of Stone's trial testimony with what he had said before the grand jury would not have been far more effective than what the trial jury may well have regarded as an invented and self-serving explanation. See United States v. Zborowski, 2 Cir., 1959, 271 F.2d 661, 667. Indeed, the prosecution should not have opposed defendant's request for the minutes, as the Assistant United States Attorney who argued the appeal frankly conceded.

If the conviction is to stand, it must thus be on the basis of Count 2.

Item 10 of the statement of affairs in the Chapter XI proceeding, Bankruptcy Form 3, required an answer to the question "What repayments of loans have you made during the year immediately preceding the filing of the original petition herein?" To this the statement verified by Stone made the following response:

> "Chemical Corn Exchange Bank & Trust Co., repaid full amount of $10,000.; David Schwartz repaid full amount of $5,000. Sue Brett repaid full amount of $2,000.00; Michael Stone, Secretary, repaid $4,660.00 since February 28, 1955—balance due $3,038.00; all as appear in the books and records".

An accountant testified that the books of Ellen-Joan showed three payments to Anita Stone during the year, one of $3,000 on July 19, 1954, another of $2,000 on March 25, 1955 and a third of $220 on May 12, 1955; the government claimed these were repayments of loans.[2] The principal defense was that the amounts recorded as loans by Mrs. Stone were in fact loans from various other persons for whom she acted as a conduit and that the repayments also

---

[1] "Q. Did you take an inventory in March? A. From then on I did take inventories and there was always some dresses short, but not to that amount that was recorded there.

"Q. In other words you never discovered a shortage of 1800? A. Not to that amount.

"Q. Can you give us an idea? A. They reported their shortage. Our accountants never reported."

[2] The July 19, 1954 check is endorsed:

> Anita Stone
> OK for Cash
> Anita Stone
> Selma Barasch.

Mrs. Stone admitted the first three lines were in her handwriting. Selma Barasch was Ellen-Joan's bookkeeper.

The March 25, 1955 check is endorsed "Anita Stone" in what is concededly her handwriting; underneath her endorsement is a rubber-stamp:

> NN For Deposit In NN.
> The Public National Bank and Trust
> Company of New York
> Jerell Juniors, Inc.

Jerell Juniors, Inc. was one of the persons from whom Anita claimed to have obtained loans.

The May 22, 1955 check bears the endorsement:

> for dy to acct of
> Anita Stone

Mrs. Stone denied this was in her handwriting; clearly the handwriting is different from that on the other two checks.

went to them. We need not consider whether a charge of failure to disclose such repayments would have been an unallowable variance; for the government chose instead to challenge the veracity of the explanation and, although we do not say defendant's story was necessarily incredible, the jury was warranted in rejecting it. Appellant's claim that any failure to include repayment of loans to Mrs. Stone in the answer to Item 10 would have been inconsequential in view of the reference made to the books and accounts, is plainly without merit; the very purpose of the statement of affairs is to give dependable information without need of going further.[3] Appellant now makes an argument, not put before the jury, which is quite persuasive as regards the March 25 and May 22 payments. This is that the loan account on the company's general ledger was a single account combining loans payable to Anita and Michael Stone and that analysis shows the two payments to Anita on March 25 and May 12 must have been included in the $4,600.00 recited in the statement of affairs as having been repaid to Michael "since February 28, 1955." However, this affords no explanation of the failure to report the $3,000 payment of July 19, 1954. It is, of course, entirely possible that if defendant's counsel had argued the disclosure of the March 25 and May 22 repayments to the jury as he has to us, the jury would not have found defendant guilty for failure to report a single payment made to Mrs. Stone nearly eleven months before; but this we can never know. To reverse because of counsel's belated discovery of this point would go beyond the plain error rule of Fed.R.

Crim.Proc. 52(b), and we cannot believe the one error to which proper objection was taken, namely, the failure to make the grand jury minutes available, prejudicial as we hold this to have been with respect to Count 1, carried over to the wholly different transactions charged in Count 2 with respect to which the government had made no claim of inconsistent grand jury testimony. Judgment affirmed.

### On Petition for Rehearing.

 Stone's petition for rehearing urges that "this Court completely overlooked appellant's argument that this $3,000 payment [of July 19, 1954] did not constitute a 'repayment of loan' which petitioner was required to list in answer to item 10 of the Statement of Affairs in the Chapter XI proceeding" because the loan account showed an item "Loans—Transferred to Paid in Surplus—August 25, 1954—$10,000" which would have left a balance due to the corporation if the $3,000 item had in fact been the repayment of a loan from Mrs. Stone. Our failure to mention this argument was not because we had overlooked it but rather because it concerned an issue of fact properly for the jury.[1] *Non constat* the $10,000 transfer to surplus recorded on August 25, a balance of more than $3,000 had been owing by the corporation on July 19; the August 25 transfer had evidentiary value as to the character of the July 19 payment but it was not conclusive as appellant now contends. The defense offered as to the $3,000 payment was that, although recorded as a payment to Mrs. Stone, it was in fact a repayment through her of a loan made to the business by one John Ignizio,

---

3. See 1 Collier, Bankruptcy, ¶7.14, at 994–95 (14th ed. 1956). The requirement, Bankruptcy Act, § 7(a) (9), 11 U.S.C.A. § 25(a) (9), was added by the Chandler Act, 52 Stat. 847 (1938). It had been provided for in the Hastings-Michener bill (H.R. 9968, S. 3866) of 1932.

1. The statement in the petition that the two payments made to Mrs. Stone on March 25 and May 22, 1955 "could not constitute a basis for petitioner's conviction" is erroneous. What we said was that if the analysis of the evidence made by appellant's counsel in his reply brief in this Court had been put before the jury at the trial, the jury might well have found that these two payments were in fact reported in the statement of affairs.

**554**

although Mrs. Stone was unable to recall Ignizio's name and the defendant did so only after considerable wavering. The jury was not bound to accept this and Stone would not have been aided if it had, for, as the government brought out in recross-examination, the statement of affairs showed no repayment of a loan from Ignizio. The gravamen of the offense charged in Count II of the indictment was knowing and fraudulent failure to disclose in the statement of affairs the repayment of loans during the year preceding the filing of the petition, and the allegation that the omitted repayments were of loans from Mrs. Stone was unnecessary, cf. United States v. Hiss, 2 Cir., 1950, 185 F.2d 822, 831, certiorari denied 1951, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683. Under the charge the jury could have found Stone guilty on the basis that the repayments were of loans from others, with Mrs. Stone merely a conduit, as well as on the basis that the repayments were of loans made by her; there was sufficient evidence to support a conviction on either basis; and the latter was a permissible variance since the statement as to the lender in the indictment was surplusage, the different version of the facts was offered by the defendant himself and thus plainly did not subject him to unfair surprise, and a conviction on this theory would not deprive him of his right to be protected against another prosecution for the same offense. See Berger v. United States, 1935, 295 U.S. 78, 83, 55 S.Ct. 629, 79 L.Ed. 1314; Meyers v. United States, 2 Cir., 1924, 3 F.2d 379; Mathews v. United States, 8 Cir., 1926, 15 F.2d 139; United States v. Remington, 2 Cir., 1933, 64 F.2d 386; United States v. Rosenblum, 7 Cir., 1949, 176 F.2d 321, 324, certiorari denied 1949, 338 U.S. 893, 70 S.Ct. 239, 94 L.Ed. 548, rehearing denied 1950, 338 U.S. 940, 70 S.Ct. 344, 94 L.Ed. 579. The other contentions in the petition have been sufficiently discussed in our initial opinion.

The petition for rehearing is denied.