In the Matter of Herman TABIBIAN,
Bankrupt-Appellant,

and

Hyacinth Rubin, Ralph Proskauer, and
Nathan Krefetz, Co-partners, Objecting Creditors-Appellees.

No. 270, Docket 26594.

United States Court of Appeals
Second Circuit.

Argued March 20, 1961.

Decided April 26, 1961.

794

Ludwig M. Wilson, New York City (Harry Rosenberg, West Hempstead, N. Y., of counsel), for appellant.

Maxwell A. Rubin, New York City, for appellees.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

The bankrupt operated, between 1945 and 1959, the Nassau Rug & Carpet Company, primarily a one-man business dealing in retail sales, laying and cleaning of carpets. The objecting creditors, in January and February of 1959, obtained two judgments against Tabibian in the New York state courts totaling almost $4,000. On March 11th of that year, Tabibian filed a voluntary petition with the bankruptcy court in the Eastern District of New York and he was adjudicated a bankrupt the same day. The present controversy concerns Tabibian's right to a discharge.

The referee conducted a hearing on the objectors' specified grounds for the denial of a discharge. The only testimony offered was that of Tabibian himself and that of the appellees' attorney. The creditors claimed that the bankrupt had concealed or transferred his assets in fraud of his creditors, Bankruptcy Act § 14, sub. c(7), 11 U.S.C.A. § 32, sub. c(7); and that he had "committed an offense punishable by imprisonment as provided under Section 152 of Title 18," Bankruptcy Act § 14, sub. c(1), 11 U.S.C.A. § 32, sub. c(1), by "knowingly and fraudulently mak(ing) a false oath." [1] The referee found that none of the objections were substantiated by the evidence and ordered Tabibian's debts discharged. On a petition for review, Judge Abruzzo reversed that order, holding that three of the specifications, concerning the concealment of property, failure to account for assets and false oaths, had been proven.[2]

The basic facts upon which the referee and district court reached opposite con-

[1] In all, there were twelve specifications put forth by the objecting creditors. Many of these were redundant and overlapping and others were found legally insufficient. In addition, the referee found for the bankrupt on the factual issues concerning an alleged failure to keep books and records; that finding was not disturbed by the court below and is not presently in issue.

[2] The three specifications in question, numbers 2, 7 and 11, are, technically, somewhat defective in that they fail to state clearly the specific legal grounds relied upon for the denial of the discharge. Since the true issues have been fairly presented, however, the District Court was correct in reaching a decision on the merits. The specifications upheld by Judge Abruzzo read as follows:

"2. In that the bankrupt surrendered his property, consisting of a truck and a station wagon, without accounting there-for either in his Petition, Schedules or examinations before the Referee;

"7. In that the bankrupt testified falsely under oath before the Referee pertaining to his transactions relating to his ownership and transfer of his 1957 Plymouth Station-Wagon and his 1954 Chevrolet Panel truck.

"11. In that the bankrupt swore falsely in his petition and schedules under oath that the business formerly conducted by him prior to his fraudulent transfer to a corporation controlled by his wife was solely a personal service business, whereas the testimony under oath developed that the bankrupt bought and sold rugs at retail, in addition to conducting a personal carpet cleaning service; that bankrupt gave false testimony before the referee that his business transferred to the corporation was active whereas said business was discontinued since the first examination of bankrupt."

clusions are these. As noted above, Tabibian and his small business got into financial straits early in 1959; the entry of judgments against him in favor of the objecting creditors pushed him over the brink. Having trouble meeting the rent and unable to get out from under his lease, he transferred headquarters to his house and turned the "business" over to a newly formed corporation, the Nassau Carpet Cleaning Corporation, owned wholly by his wife. Neither Mrs. Tabibian nor the corporation paid anything for the "assets" turned over by the individual proprietorship (nor was there any evidence that any *physical* assets were actually transferred). The bankrupt's principal assets, prior to filing of the petition, were a panel truck and a late model station wagon. He claims to have sold the truck at the end of January 1959 for $300, which funds he used to finance his bankruptcy. He claims that he notified the vendor of his station wagon that he would be unable to continue payments at which point the vendor, purported holder of a chattel mortgage or a conditional bill of sale on the vehicle, repossessed the wagon. (Tabibian did not obtain a receipt from the person who picked up the car and he apparently did not demand to see his credentials. A letter written to the alleged chattel mortgagee by the objecting creditors was not answered.)

The false oaths relied upon below also center principally upon the two motor vehicles. The bankrupt, in filling out the necessary verified forms for his petition, answered "none" to a query as to what, if any, transfers of property he had made in the preceding year. A fortnight later, however, at the first meeting of creditors, he testified openly and rather spontaneously as to both transactions involving the motor vehicles. In addition, Tabibian exhibited a good deal of confusion concerning his working activities during the two weeks directly preceding the filing of his petition and also concerning the business address of his wife's newly formed corporation.

■■ The rule in this circuit is that the findings of a referee in bankruptcy are to be upheld unless found "clearly erroneous" under the test of Rule 52(a), F.R.Civ.P., 28 U.S.C. Stim v. Simon, 2 Cir., 1960, 284 F.2d 58; In re Di Palo, 2 Cir., 1955, 218 F.2d 816. There is authority in other circuits supporting the thesis that findings of "ultimate fact" should be reviewed on a much broader basis by both the District Court and the Court of Appeals. In re Pioch, 3 Cir., 1956, 235 F.2d 903; Costello v. Fazio, 9 Cir., 1958, 256 F.2d 903. In the instant case, especially on the issue of the alleged "false oaths," the credibility of the bankrupt is a very important factor. Since only the referee heard that testimony and observed the bankrupt giving it, the scope of review should be relatively narrow in accordance with the earlier cases in this circuit.

■■ The general rule as to the burden of proof in a contested discharge is that the objectors must make a *prima facie* case, i. e., establish "reasonable grounds for believing" that there was fraud, etc., at which point the burden shifts to the bankrupt to "satisfactorily explain" the questioned transactions. McMullin v. Todd, 10 Cir., 1955, 228 F.2d 139, 142; In re Roberts, D.C.M.D.N. Car.1959, 176 F.Supp. 361. It is true that a discharge is a privilege granted the honest debtor and not a right accorded to all bankrupts. In weighing the facts put forward in a contest over a discharge, however, a court should keep in mind the beneficial policy allowing the honest debtor to get a new start in business and life—and should construe § 14 strictly against the objectors and liberally in favor of the bankrupt. In re Leichter, 3 Cir., 1952, 197 F.2d 955.

■ The referee was correct in finding that the objectors had failed to prove their case concerning the alleged fraudulent concealment or disposition of assets. Appellees, and the court below, make much of the fact that the wife paid nothing for the assets of the business; the objectors did not make the slightest

showing, however, that there were any assets transferred.[3] The "good will" of a continuing business, divorced from any physical assets, is exactly the type of asset which the Bankruptcy Act leaves with the bankrupt to continue his economic career. The fact that this asset, of no monetary value when separated from the bankrupt's future business prospects, was "transferred" to the wife's corporation, which in turn "employed" Tabibian, is not significant. Such a device might be used in fraud of creditors if employed to shelter, within the corporation, the bankrupt's pre-petition earnings. However, there is no evidence that the wife's corporation had any earnings or profits prior to Tabibian's petition. The case of In re Reidy, D.C.D.N.J.1935, 12 F.Supp. 370, relied upon by the District Court, is inapposite. In that case the bankrupt had incorporated his business nine months before bankruptcy and had actively operated it as a corporation for a few months prior to the filing of an individual petition. Unlike our case, the corporation in Reidy had, at the time of petition, substantial assets; the court mentions at least $800 in accounts receivable. The bankrupt failed to declare on his schedule of assets either his shareholder's interest in the newly formed corporation or the actual assets of the corporation.

■ There is, similarly, insufficient evidence to support a finding of fraudulent transfer or concealment of the motor vehicles. The bankrupt's testimony that the truck was sold for $300 to finance his bankruptcy has not been controverted. Such a transaction is not a surprising one for a man in financial difficulties. Although Tabibian's explanation of the repossession of his station wagon is rendered somewhat suspect by its lack of documentary substantiation, there is no affirmative evidence of fraud. It is only too common in this era for a man's automobile to be encumbered and a court is not warranted in "presuming" there was a fraudulent transfer absent an affirmative showing that some equity of the debtor was transferred without consideration.

■■ Denial of a discharge for failure to "explain satisfactorily" a loss or deficiency of assets, 11 U.S.C.A. § 32, sub. c(7), is the other side of the fraudulent conveyance coin. It may be successfully employed where objectors do not know in what manner the bankrupt's assets were dissipated—but where they can establish the presence of assets before bankruptcy which were not declared as such on the property schedules. The burden is then placed on the bankrupt to account for their absence. In the present case only Tabibian's explanation of the station wagon transfer was perhaps suspicious; all his stories were plausible. The referee had the only oportunity to observe the bankrupt as a witness; his acceptance of the bankrupt's story was surely not "clearly erroneous."

■ The most difficult question presented concerns the bankrupt's "false oaths." Most of his misstatements were on totally irrelevant points concerning the wife's business, i. e. the date he began working for the corporation and the address of same. His apparent inability to tell the same story twice running may be ascribed more to confusion than to any conscious fraudulent design. The untruthful answer on the schedule of his affairs, denying any transfers in the year before bankruptcy, is much more serious.

---

3. There was testimony that the individual proprietorship owned a desk and an adding machine but no proof was offered that these were transferred to the wife's corporation at the new business address. Furthermore, it is at least doubtful whether a transfer of such assets, probably worth almost nothing, would constitute "fraudulent concealment" of property. There was much confusion engendered at the hearing over the question of whether Tabibian conducted a retail sales business with substantial inventory. It would appear though that the bankrupt's "sales" consisted almost entirely of the receiving and transmittal of orders placed after the inspection of swatches—and that his inventory, if any, was negligible. At any rate, there is no evidence that inventory was transferred, without consideration, to Mrs. Tabibian.

The referee felt that the false answer in the petition was "cured" by his subsequent testimony at the first meeting of creditors. As a "rule of law," stated broadly, the referee was incorrect. "The very purpose of the statement of affairs is to give dependable information without need of going further." United States v. Stone, 2 Cir., 1960, 282 F.2d 547, 553 and footnote 3. To warrant denial of a discharge, however, the misstatement must have been fraudulent; in determining the bankrupt's state of mind, the referee was entitled to consider the later disclosure as some evidence of innocent intent. Here the small size of the transaction, the brief interval between the statement and the first meeting, and the spontaneous nature of the disclosure coupled with fairly plausible explanations of the transfers themselves were enough to warrant the referee's finding. The referee observed Tabibian on the stand and had by far the best vantage point from which to measure the good faith of the bankrupt; there is insufficient extrinsic evidence from which to conclude that he was clearly erroneous.

The decision of the court below is reversed.