**In re Dennis Joseph MAZZOLA and Anne Tresa Mazzola, Debtors.**

**Wayne LaVANGIE and Gayle LaVangie, Plaintiffs,**

v.

**Dennis Joseph MAZZOLA and Anne Tresa Mazzola, Defendants.**

Bankruptcy No. 79–01910–HL.
Adversary No. 79–0057–HL.

United States Bankruptcy Court,
D. Massachusetts.

May 5, 1980.

Paul J. Driscoll, Driscoll & Davis, Marshfield, Mass., for plaintiffs.

Richard S. Weiss, Boston, Mass., for defendants-debtors.

## MEMORANDUM ON DISCHARGE

HAROLD LAVIEN, Bankruptcy Judge.

The plaintiffs in this proceeding, Wayne and Gayle LaVangie, seek to bar the discharge of the debtors, Dennis Joseph Mazzola and Anne Tresa Mazzola, pursuant to the provisions of sections 727(a)(4)(A) and 727(a)(2)(A) of the Bankruptcy Code. The plaintiffs allege the debtors made false oaths on their petition and transferred and concealed property within one year preceding the filing of the petition. The debtors concede the inaccuracies in their schedules and statement of affairs. Mrs. Mazzola contends she simply signed the documents without reading them and Mr. Mazzola contends that the inaccuracies were the result of innocent misunderstandings and mistakes and were not the product of any fraudulent intent. They each deny any fraudulent intent in the sale of real estate, the deposit of the funds in their nonbankrupt corporation, and the use of the funds to pay corporate creditors. After an evidentiary hearing at which both debtors testified and were cross-examined, I make the following findings of fact.

The debtors filed a joint petition under Chapter 7 of the Bankruptcy Code on October 15, 1979. At the time of filing, the debtor Dennis Mazzola was the sole stockholder of the Dennis M. Construction Co., Inc., and was engaged in the home construction industry. Just prior to the filing of the bankruptcy, the plaintiffs had been involved in bitter litigation with the debtors (Dennis M. Construction Co., Inc. was not a party) over a claim of faulty home construction. In fact, in August of 1979, the plaintiffs obtained an attachment on two parcels of property owned by the debtors jointly. In early September of 1979 the debtors accomplished the dissolution of the attachment, sold the properties speedily, deposited the $14,000 received from the sale in the checking account of Dennis M. Construction Co., Inc. and used the proceeds to pay the corporation's creditors. The debtors then abandoned their defense in the state court action and filed a petition in bankruptcy on October 15, 1979. The testimony adduced at trial revealed several false answers in the debtors' schedules and statement of affairs.

(1) In response to item "t" on schedule B-2, a question seeking disclosure of the description, location, and market value of the debtors' interest (without deduction for secured claims or exemptions) in "stocks and interests in incorporated and unincorporated companies", the debtors answered "0". In fact, however, the debtor Dennis Mazzola was the sole stockholder of the Dennis M. Construction Co., Inc.

(2) The debtors answered "No" to question 10c of the statement of affairs which reads:

Has any of your property been attached, garnished, or seized under any legal or equitable process within the year immediately preceding the filing of the original petition herein? (If so, describe the property seized or person garnished, and at whose suit.) In fact, the plaintiffs herein had obtained an attachment on two parcels of property owned by the debtors in August of 1979. The attachment in question was dissolved approximately two weeks after it was initially granted.

(3) In response to question 12b on the statement of affairs which reads:

Have you made any other transfer, absolute or for the purpose of security,·or any other disposition, of real or tangible personal property during the year immediately preceding the filing of the original petition herein?

(give a description of the property, the date of the transfer or disposition, to whom transferred or how disposed of, and, if the transferee is a relative or insider, the relationship, the consideration, if any, received therefor, and the disposition of such consideration.)

the debtors answered "No". The debtors, however, transferred two parcels of land which they held in their joint names to homebuyers. The proceeds of the sale were transferred to the corporate account and were used to pay creditors of the corporation rather than the debtors' personal creditors.

At trial both debtors acknowledged the authenticity of their signatures on the petition, schedules and statement of affairs. By way of explanation of the false answers, Mr. Mazzola testified that (1) he did not list the stock of the Dennis M. Construction Co., Inc., because in his estimation the stock had no value and therefore was not within the purview of the question; (2) he did not list the attachment obtained by the plaintiffs because he considered the attachment illegal and void and because it was dissolved approximately·two weeks after it was granted; (3) he failed to disclose the transfer of the two properties because he misunderstood the question and though it asked what other properties he currently owned rather than what properties he had transferred.

The explanation offered by Mrs. Mazzola for her signing of the documents containing the false statements was simply that she did not participate in the preparation of the documents and that she signed the documents without first reading them even though she was the individual who maintained the books and disbursed checks and was thoroughly conversant with the true facts.

■■■ On the schedules and statement of affairs, an essential part of any petition in bankruptcy,[1] the debtors' signatures were immediately preceded by the following language:

We Dennis Joseph Mazzola and Anne Tresa Mazzola certify under penalty of perjury that we have read the foregoing schedules, consisting of 14 sheets, and that they are true and correct to the best of our knowledge, information, and belief.

Section 727(a)(4)(A) of the Bankruptcy Code provides:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A).

The purpose of section 727(a)(4)(A) and its predecessor, section 14c(1) of the Bankruptcy Act is to ensure that dependable information is supplied for those interested in the administration of the bankruptcy estate on which they can rely without the need for the trustee or other interested parties to dig

---

1. *See,* 11 U.S.C. §§ 301, 521(1).

out the true facts in examinations or investigations. *See, e. g., In re Tabibian*, 289 F.2d 793, 797 (2d Cir. 1961). *Cf. United States v. Stone*, 282 F.2d 547, 553 (2d Cir. 1960). The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the bankrupt's hands during a period prior to his bankruptcy. *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974) (quoting *In re Slocum*, 22 F.2d 282, 285 (2d Cir. 1927)). A false statement in the schedules or statement of affairs due to mere mistake or inadvertence is insufficient for the denial of a discharge; fraudulent intent is necessary to bar a discharge. *See, e. g., In re Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974); *Avallone v. Gross*, 309 F.2d 60, 61 (2d Cir. 1962). A reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge. *In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969). The determination of relevance and importance of the question is not for the debtor to make. It is the debtor's role simply to consider the question carefully and answer it completely and accurately. *See, In re Condura*, 5 Bankr.Ct.Dec. 578, 579–80 (S.D.N.Y.1979).

▮ There is no question in the present case that the schedules and statement of affairs filed by the debtors contained numerous false statements. The debtors concede the false statements exist. The determinative issue with regard to the ultimate granting or denial of discharge is whether those false statements were knowingly and fraudulently made so as to fall within the prohibition of section 727(a)(4)(A).

After hearing and observing Mr. Mazzola at trial, the court finds the explanations offered by Mr. Mazzola for the false statements in the documents not credible. The present facts do not reflect mere mistake or inadvertence but rather are indicative at the very least of such a cavalier and reckless disregard for truthfulness as to cause the court to find fraudulent intent. The court finds Mr. Mazzola's explanation for

the false answer to question 12b on the statement of affairs to be particularly disturbing. Question 12b clearly asks the debtors whether they have transferred any real or tangible personal property during the year immediately preceding the filing of the petition (for full text of question 12b see *supra* ). The debtors answered "No" to the question. Mr. Mazzola stated at trial, under oath, that he interpreted the question to ask if he currently owned any property. The court cannot accept this explanation as credible. Mr. Mazzola is not an unintelligent individual inexperienced in real estate transactions as is evidenced by the fact that for many years he made his living building homes and buying and selling real estate. Mr. Mazzola's alleged interpretation of question 12b cannot be deemed a reasonable and honest misinterpretation of the question. The question is entitled, in bold face, "Transfers of property". There is nothing that could justify any genuine belief that "transfer" meant "present ownership". In fact, the entire page of the statement of affairs asks questions *only* about transfers. The pleadings further belie the credibility of this explanation, as the debtors' answer to the plaintiffs' complaint states that the debtor simply overlooked these properties. Indeed, even this contradictory explanation leaves much to be desired in the area of credibility inasmuch as these properties were subject to a controversial attachment obtained by the plaintiffs during the state court litigation between the parties and had been sold only one month prior to the filing of the bankruptcy petition.

None of this even attempts to explain why the transfer of the $14,000 from the sale of these properties to the corporation was not mentioned in the answer. Likewise, the explanations of the other false statements fall short of being credible. Mr. Mazzola claimed he failed to disclose the sole ownership of the corporation's stock because he believed it to have no value and that he failed to list the attachment because he considered it to be illegal and because it was dissolved approximately two weeks after it was granted. Individually any one of these explanations might appear plausible

in the abstract, but when combined with the fact of the existence of the bitterly contested state court proceedings, the speed of the conveyances when the attachment was dissolved, the immediate transfer of the sale proceeds to the corporation which was not a party to the law suit, the subsequent abandonment of the state court proceeding, and the almost simultaneous filing coupled with the blatantly false answers, there is simply too much self-serving "misunderstanding" and "mistake".

■ The fact that the stock may have been worthless (note that the corporation as of this date has not filed bankruptcy and no evidence has been offered of its dissolution) is no excuse for not listing it. Schedule B–2 t. provides a space for stating its value. The court notes that the debtor listed in his statement of affairs at least one bank account in which he had no funds so that he recognized an obligation to include valueless property. In *In re Mascolo*, 505 F.2d 274, 277–78 (1st Cir. 1974) the court indicates the *importance of and relevance of* including even closed bank accounts. The duty is on the debtor to answer not to evaluate. *See, In re Condura*, 5 Bankr.Ct. Dec. 578, 579–580 (S.D.N.Y.1979). The fact that property may be without value is not determinative of whether it should be disclosed. "Matters are material if pertinent to the discovery of assets, including the history of a bankrupt's financial transactions." *In re Mascolo*, 505 F.2d 274, 277 (1st Cir. 1974). "[T]he materiality of the false oath will not depend upon whether in fact the falsehood has been detrimental to the creditors." *In re Slocum*, 22 F.2d 282, 285 (2d Cir. 1927).[2] The duty is upon the debtor to honestly and fully answer the questions in the petition; the trustee and the creditors should not be forced to search out the true state of affairs. *See, e. g., In re Mas-*

*colo*, 505 F.2d 274, 278 (1st Cir. 1974) ("The successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure."); *In re Tabibian*, 289 F.2d 793, 797 (2d Cir. 1961).

Similarly, the omission of the attachment on the debtors' property might be understandable standing by itself, but like the closed bank accounts in *Mascolo*, it is a link in the chain of financial transactions that might have led the trustee to consider turnover or preference actions. It was to the debtor's advantage to obscure the trail. Mr. Mazzola's testimony was simply not credible.

I find that the statements were made with a calculated disregard for the importance of documents which were signed under penalty of perjury and on which a determination on the request for a discharge would be made. This reckless disregard for the truth is the equivalent of the fraudulent intent necessary to bar a discharge.

■ In regard to the debtor Anne Tresa Mazzola, the court similarly finds that the false oaths were made knowingly and fraudulently. The court cannot accept a failure to read a petition by a debtor with intimate knowledge of the true facts as a valid excuse for false oaths contained therein. In view of the benefits accorded under the Bankruptcy Code, the debtor owes a duty at the very least to make a good faith effort at compliance with the filing requirements. "Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt, c. f. *United States v. Stone*, 282 F.2d 547, 553 (2d Cir. 1960). Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to

---

**2.** The debtors argue that because the true facts were ultimately discovered by the trustee upon examination of the debtors, the subsequent disclosure cures the initial failure to disclose. A subsequent disclosure, however, does not necessarily exculpate debtors from earlier wrongs.

The referee felt that the false answer was "cured" by his subsequent testimony at the

first meeting of creditors. As a "rule of law", stated broadly, the referee was incorrect.

*In re Tabibian*, 289 F.2d 793, 797 (2d Cir. 1961). *See also, In re Moynagh*, 560 F.2d 1028 (1st Cir. 1977).

the truth . . . is the equivalent of fraud." *In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969).

It is urged further that the evidence is not sufficiently clear and convincing that the false testimony was given "knowingly and fraudulently." While the statute does not withhold a discharge from a bankrupt who has testified falsely through error, its benefits are intended only for honest debtors. Those who purposely answer untruthfully concerning material matters propounded upon their examination deserve no favor.

*In re Slocum*, 22 F.2d 282, 285 (2d Cir. 1927).

While the discharge of an honest bankrupt who has fully and fairly complied with all of the requirements of the statute is one of the prime objects of bankruptcy, the right to discharge does not flow from the fact of adjudication alone, but from that fact coupled with compliance with all of the essential requirements of the Bankruptcy Act . . .
*In re Goldman* (C.C.A.) 37 F.(2d) 97. One of these prime requisites is that it shall appear that the bankrupt has made an honest and faithful effort to comply . . . .

*In re Perel*, 51 F.2d 506, 507 (S.D.Tex.1931). It has long been recognized that reckless disregard for the truth is the equivalent of fraud. In *Lievre v. Gould*, 1 Q.B. 491 (1893) the court stated:

Again, a man must be said to have fraudulent mind if he recklessly makes a statement intending it to be acted upon, and not caring whether it be true or false. I do not hesitate to say that a man who thus acts must have a wicked mind.

*Id.* at 498.

But his mind is wicked, not because he is negligent, but because he is dishonest in not caring about the truth of his statement . . . it is the wicked indifference, which constitutes the fraud.

*Id.* at 500–01. *See also, In re Herriot*, 1 Bankr.Ct.Dec. 793, 796 (D.Mass.1975).

It is hereby ordered that the debtors Dennis Joseph Mazzola and Anne Tresa Mazzola be denied discharges in bankruptcy due to their false oaths in violation of 11 U.S.C. § 727(a)(4)(A).

Inasmuch as the issue of denial of discharge has been determined pursuant to section 727(a)(4)(A), it is not necessary for the court to reach the issues presented by plaintiffs' allegations arising under section 727(a)(2)(A).