In re Joseph J. GLICKMAN and Edna R. Glickman, Debtors.

Estelle ZANGEN, as personal representative of the Estate of Joseph H. Zangen, Plaintiff,

v.

Joseph J. GLICKMAN and Edna R. Glickman, Defendants.

Douglass E. WENDEL, Trustee, Plaintiff,

v.

Joseph J. GLICKMAN and Edna R. Glickman, Defendants.

Bankruptcy No. 86–00610–BKC–TCB. Adv. Nos. 86–0383–BKC–TCB–A, 86–0390–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

July 29, 1986.

Angus J. Campbell, West Palm Beach, Fla., for defendants.

Alan S. Zangen, West Palm Beach, Fla., for plaintiff Estelle Zangen (86–0383).

Leslie Gern Cloyd, West Palm Beach, Fla., for plaintiff Douglass E. Wendel (86–0390).

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

Each of these complaints opposes the debtors' discharges under 11 U.S.C. § 727(a)(2)(A) and (4)(A). The debtors have answered. At the joint suggestion of the parties, these two matters were tried upon a single record.

The facts are simple. On February 18, 1986, fifteen days before they filed for bankruptcy, the debtors consigned household furniture and furnishings worth at least $20,000 to an auction house in Delray Beach with directions to sell the furniture and forward the proceeds to the debtors' married daughter who lives in New York.

On February 25, eight days before bankruptcy, the debtors paid $9,750 to their personal attorney.

Between four and six months before bankruptcy, the debtors assigned all their stock in their family corporation to their daughter's husband. The corporation held the title to their home which was sold by the corporation 19 days after bankruptcy for $300,000.

The debtors received no contemporaneous consideration for any of these transfers.

The debtors' Statement of Financial Affairs, questions 12 and 15(b), specifically required disclosure of the foregoing transfers. Under oath, the debtors falsely denied making any gift or any other transfer during the year before bankruptcy and denied making any payment or transfer to an attorney, other than their bankruptcy attorney.

A debtor's discharge must be denied if the debtor with intent to hinder, delay, or defraud has transferred his property within a year before bankruptcy, § 727(a)(2)(A), and if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath, § 727(a)(4)(A).

I find and conclude that the debtor husband has transferred his property within one year before bankruptcy with intent to hinder, delay, or defraud his creditors in each of the foregoing instances and that he has knowingly and fraudulently made a false oath in each of the foregoing respects when he executed the Statement of Financial Affairs filed in this case.

The debtor wife participated through her signature in the transfers and in the execution of the bankruptcy Statement of Financial Affairs. The corporate stock had been issued in her name alone. Despite these circumstances, I find that she did not intend to hinder, delay or defraud her creditors and she did not fraudulently make a false oath. She is bedridden. I believe that her husband has independently conceived and carried out the foregoing acts, that his wife relied upon his judgment and executed the necessary papers at his request and upon his recommendation. I find no basis to deny her discharge. His discharge must be denied.

The defense offered by the debtor husband is that the transfer of the furniture merely implemented a commitment made by him on January 5, 1985, more than a

year before bankruptcy, that he voluntarily revealed the transfer during his oral examination on June 3, and that he voluntarily revealed the details of the other two transfers during his oral examination at the creditors' meeting held April 10. His position is that he has demonstrated that there was no intent to hinder, delay or defraud creditors and no fraudulent falsehood in connection with any of these transfers. The proceeds from the furniture sale have been voluntarily paid over to the trustee. He states that if he has erred, the error has been harmless.

■ It is, I believe, clear that a false answer in the bankruptcy petition is not cured by subsequent testimony during the bankruptcy administration, but a subsequent voluntary disclosure may be considered as some evidence of innocent intent. In *In re Tabibian*, 289 F.2d 793, 797 (2nd Cir.1961) in dealing with the statutory predecessor of § 727(a)(4)(A), the court said:

> The referee felt that the false answer in the petition was "cured" by his subsequent testimony at the first meeting of creditors. As a "rule of law," stated broadly, the referee was incorrect. "The very purpose of the statement of affairs is to give dependable information without need of going further." *United States v. Stone*, 2 Cir., 1960, 282 F.2d 547, 553 and footnote 3. To warrant denial of a discharge, however, the misstatement must have been fraudulent; in determining the bankrupt's state of mind, the referee was entitled to consider the later disclosure as some evidence of innocent intent.

*See also Mazer v. United States*, 298 F.2d 579, 582 (7th Cir.1962); *In re Diorio*, 297 F.Supp. 842, (S.D.N.Y.1968), *aff'd*, *Diorio v. Kreisler-Borg Construction Co.*, 407 F.2d 1330 (2nd Cir.1969).

In *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 617 (11th Cir.1984), the court affirmed denial of discharge under § 727(a)(4)(A) of a debtor whose bankruptcy schedules contained a material omission, even though the omitted information was revealed by the debtor seven months later during oral examination during the bankruptcy administration.

■ In rejecting the debtor husband's explanation and excuse for the significant errors and omissions in his Statement of Affairs, I have considered not only his demeanor on the stand, his testimony during his two earlier examinations under oath, but also the following circumstances. Glickman is an intelligent, experienced and, at one time, successful businessman. A financial statement of May 1981 reflected a net worth of $1.1 million. At that time he had paintings, antiques, jewelry and household furnishings worth $200,000. This personal property, his home and the family corporation appeared to have been his principal assets. There is, as yet, no trace of the paintings, antiques or jewelry, and the remaining assets were put in the hands of close relatives. Although the Statement of Affairs reveals that the stock "is being held as collateral on various loans" (question 2(c)) and has been "assigned as collateral" (question 9(b)), neither response reveals that it was assigned to the son-in-law. There is no explanation why the debtor did not reveal this information in response to question 12(b) which pointedly called for this information. Although the debtor testified at the creditors' meeting on April 10 that he arranged the assignment of the stock to his son-in-law as collateral for an alleged $35,000 promissory note, he later testified on June 3 that there is no note. There is no confirmation in this record from any source that he is indebted to his son-in-law. The debtors' schedules falsely give zero value to the stock.

The attempted transfer of the household furnishing proceeds to the daughter was not only completely omitted from the bankruptcy petition, Glickman specifically denied any transfers of any property to any relative at any time within two years be-

fore bankruptcy during his oral examination by two separate attorneys and did not reveal this transfer until two months later at a second oral examination conducted by the trustee. At that late date, Glickman produced a memorandum dated January 5, 1985, addressed to his daughter and her husband acknowledging a present indebtedness of $2,800, an obligation for future assistance up to the amount of $13,000 and expressed the intention to sell his home and his surplus home furnishings and to repay his obligation from those proceeds. There is no confirmation from any source of any of this self-serving evidence.

The transfer to the attorney, completely undisclosed in the Statement of Affairs, despite the specific nature of Question 15(b), involves at best an apparent voidable preferential transfer and at worst an attempted concealment of substantial cash.

This is not a situation involving details which plausibly could have been overlooked or forgotten. This is not a situation where an attorney's advice led to a misjudgment and false answers. Nor is this the situation of a sick, senile or uneducated individual wrestling with a highly technical question. The questions are clear and simple. Glickman enjoys excellent health and, I am convinced, deliberately intended to and attempted to put his remaining surplus household furnishings out of the reach of creditors along with the family corporate stock. He did not abandon either effort until he got cold feet because of the persistence of both the trustee and the judgment creditor. Had either been less diligent, Glickman could easily have and probably would have substantially defrauded his creditors.

As is required by B.R. 9021(a), a separate judgment will be entered dismissing each complaint with prejudice as to the defendant wife and denying the discharge of the defendant husband under § 727(a)(2)(A) and (4)(A). Costs may be taxed on motion.